AQUILINA VILLANUEVA CARBALLO, demandante y apelada, *v.* JUAN SUÁREZ PÉREZ y su esposa MERCEDES ZENGOTITA y GUMERSINDO FALÚ, demandados y apelantes los dos primeros.

No. 4694.—*Sometido:* Junio 18, 1929. *Resuelto:* Mayo 27, 1930.

*Feliú & La Costa,* abogados de los apelantes; *M. Martínez Dávila,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

De la relación del caso y opinión del Juez de la Corte de Distrito de San Juan, en este pleito, copiamos aquí, como declaración de hechos probados en el juicio, lo que sigue:

"Que la demandante Aquilina Villanueva Carballo, es heredera testamentaria de Manuel Falú Benítez, que falleció el día 22 de noviembre de 1923, según escritura número treinta de fecha 28 de agosto de 1923 otorgada en Río Piedras, ante el notario don Enrique Díaz Viera, habiendo sido nombrada heredera en la mitad de los bienes del causante Manuel Falú Benítez en usufructo, y también heredera de la mitad de la nuda propiedad de los bienes en que recayera su cuota usufructuaria. La demandante era esposa del causante Manuel Falú Benítez.

"Que el demandado Gumersindo Falú fué también instituído he-

redero del causante Manuel Falú Benítez, según la dicha escritura de testamento número treinta de fecha 28 de agosto de 1923, otorgada ante el dicho notario Enrique Díaz Viera.

"Que el demandado Gumersindo Falú fué nombrado albacea encargado de cumplir la última voluntad del causante Manuel Falú Benítez, según consta del dicho testamento arriba reseñado.

"Que en virtud de la escritura de partición, liquidación y adjudicación de bienes del causante Manuel Falú Benítez, otorgada ante el notario don Enrique Díaz Viera, bajo el número trece del protocolo de dicho notario en el mes de julio de 1924, le fueron adjudicados al demandado Gumersindo Falú, entre otros bienes, para el pago de una hipoteca, garantizada dicha hipoteca con pagarés hipotecarios al portador, la siguiente finca:

" 'RUSTICA: que radica en el Barrio de Sabana Llana, en el término municipal de Río Piedras, compuesta de 161.52 cuerdas, equivalentes a 63 hectáreas, 48 áreas y 37 centiáreas. Colinda al Norte con tierras de H. A. McKormick, la Laguna de San José y un caño; por el Sur, con terrenos de la Laguna Fruit Co.; por el Este con la finca Campo Rico, por el Oeste con Rufino Febres antes, hoy A. J. Sykes como antes, y también hoy con terrenos que de la finca fueron segregados y que pertenecen a Scoville & Co.'

"Que la finca anteriormente descrita le fué adjudicada al demandado Gumersindo Falú, en su carácter de albacea testamentario, para el pago de la hipoteca a que se ha hecho referencia anteriormente, en la suma de veinte mil dollars ($20,000), con la expresa condición y bajo la estipulación entre los herederos testamentarios de Manuel Falú Benítez, que aunque dicha finca tenía un valor mayor de veinte mil dollars, se adjudicaba en dicha suma, para que si era vendida en una suma mayor de veinte mil dollars, el exceso del precio en que fuera vendida sería repartido entre dichos herederos testamentarios de Manuel Falú Benítez, en la parte que le correspondiera según dicho testamento.

"Que el demandado Gumersindo Falú tenía conocimiento de este convenio, así como también el demandado Juan Suárez Pérez tenía conocimiento del mismo convenio ya antes relatado.

"Que los demandados Gumersindo Falú y Juan Suárez Pérez gestionaron y vendieron la finca reseñada y descrita en el hecho cuarto de la demanda, a don Ángel Fernández Ortiz, de Naguabo, en la suma de veinte y seis mil dollars, o sea, seis mil dollars en exceso del precio por el cual fué dicha finca adjudicada en la dicha escritura de partición, liquidación y adjudicación de bienes, otorgada ante el notario Enrique Díaz Viera.

"Que dichos demandados Gumersindo Falú y Juan Suárez Pérez se confabularon entre sí, y valiéndose de falsas simulaciones, hicieron aparecer en la escritura de venta llevada a cabo ante el notario don Heriberto Torres Solá, en el pueblo de Río Piedras, bajo el número 252 de fecha 23 de septiembre de 1924, que dicha finca había sido vendida solamente en la suma de veinte mil dollars, cuando en realidad el verdadero precio y consideración de dicha venta efectuada por la dicha escritura número 252, otorgada ante el notario Torres Solá, era la suma de veinte y seis mil dollars, de los cuales, los demandados Gumersindo Falú y Juan Suárez Pérez recibieron la suma de veinte mil dollars, de contado, de manos del comprador de dicha finca, don Ángel Fernández Ortiz.

"Que en la misma fecha de septiembre 23 de 1924 y ante el notario don Heriberto Torres Solá, el comprador don Ángel Fernández Ortiz, por la escritura número 253, constituyó hipoteca voluntaria a favor del demandado Juan Suárez Pérez, por la suma de seis mil dollars, que era el resto del precio de la finca, aplazado dicho pago, para el cumplimiento de ciertas obligaciones contraídas para con el comprador de dicha finca, por parte de uno de los demandados, Juan Suárez Pérez.

"Que a la demandante le corresponde del exceso de seis mil dollars en que fué vendida la finca, y del precio que fué adjudicada, la suma de tres mil dollars.

"Que los actos ejecutados por los demandados Falú y Suárez Pérez son una confabulación maliciosa, una conspiración llevada a cabo entre dichos demandados para defraudar a la demandante en la parte que le corresponde del exceso de precio de la venta, según aparece de las dichas escrituras Nos. 252 y 253, otorgadas ante el referido notario H. Torres Solá.''

Y sobre esos hechos la corte dictó sentencia declarando con lugar la demanda de Aquilina Villanueva, en lo que ésta había solicitado que se condenara a Juan Suárez Pérez y Gumersindo Falú, mancomunada y solidariamente a pagar a la demandante tres mil dollars, y las costas, gastos y honorarios de abogado.

Contra esa sentencia se interpuso el presente recurso de apelación, señalándose por el apelante Juan Suárez Pérez los siguientes errores:

"I. Al concluir y dar por probado que la adjudicación de bienes a que se refiere la demanda se hizo sujeta a convenio alguno entre

los herederos del causante Falú Benítez sobre distribución del exceso de precio por que se vendiera la finca adjudicada.

"II. Al concluir y dar por probado que el apelante Suárez Pérez tenía conocimiento de tal supuesto convenio.

"III. Al concluir y dar por probado que la tal finca 'se vendió por más del precio por que fué adjudicada.

"IV. Al concluir y dar por probado que el apelante Suárez Pérez y el demandado Falú se confabularon y se valieron de falsas simulaciones para hacer aparecer, e hicieron aparecer, que la tal finca se vendió por un precio más bajo del que en realidad lo fué.

"V. Al concluir y dar por probado que los actos ejecutados por el apelante Suárez Pérez en el presente caso constituyen una confabulación maliciosa y conspiración de éstos para defraudar a la demandante de la supuesta participación que le correspondiera en el supuesto exceso. del precio de venta de la dicha finca.

"VI. Al denegar la moción de *nonsuit* de estos apelantes.

"VII. Al dictar sentencia a favor de la apelada y condenar a los demandados al pago de $3,000.00 e imponer a éstos las costas.

"VIII. Al permitir que la demandante probara, en perjuicio de estos apelantes, y con evidencia oral, la existencia del supuesto convenio de distribución del exceso del precio de venta de la dicha finca."

■ Empezaremos por el supuesto error en la denegación de la moción de *nonsuit*.

Se ha declarado por este tribunal que en el caso de haber alguna prueba de las alegaciones esenciales de la demanda no cabe la concesión de una moción de *nonsuit*.

"La idea de la palabra *nonsuit* significa que el demandante no ha probado un caso *prima facie*." Gandía v. Porto Rico Fertilizer Co., 28 D.P.R. 555.

". . . una moción de *nonsuit* es semejante a una excepción perentoria a la prueba." Vargas v. Monroig e Hijos, 15 D.P.R. 27, y Méndez v. Banco Comercial, 26 D.P.R. 647.

"La sentencia de sobreseimiento por falta de prueba (*nonsuit*) ha de descansar en la carencia de prueba del demandante para sostener su demanda, pero en ella no se aquilata la prueba." González v. González, 30 D.P.R. 825, y Calcerrada v. American Railroad Co., 35 D.P.R. 873.

Y en el caso *López* v. *Sánchez,* 22 D.P.R. 558, se cita con aprobación la doctrina del caso *Cummings* v. *H. & L. S. & R. Co.,* 26 Mont. 441, en que se dijo:

"En una moción de *nonsuit* todo lo que de la prueba resulte de modo suficiente en favor del demandante deberá considerarse como establecido; en otras palabras, al ser interpuesta dicha moción debe presumirse que es cierta la prueba que tiende a sostener el caso del demandante y deberá ser considerada en el sentido más favorable para él, y lo que la prueba tiende a mostrar debe ser tenido como probado. Esta bien conocida regla con frecuencia ha sido enunciada y aplicada por este tribunal.

A la luz de esta jurisprudencia, y habiéndose presentado por el demandante prueba tal como la declaración de Gumersindo Falú, la de Estanislao Torres, y la de Angel Banuchi, y otras, acerca de los hechos fundamentales de la demanda, la corte de distrito procedió con acierto al denegar la moción.

■■ Se hallan de tal manera relacionados entre sí los demás señalamientos de error, que se pueden tratar dividiéndolos en grupos: uno el relativo a la admisibilidad de cierta prueba; otro el relativo a la apreciación de la prueba de un convenio adicional; otro que se refiere a la apreciación de la prueba de confabulación y fraude.

Se ha mantenido por la demandante que al hacerse la partición de bienes de la herencia de Manuel Falú Benítez se convino entre los herederos que si resultaba algún exceso del precio de venta de la finca que se adjudicó a Gumersindo Falú para el pago de deudas, tal exceso sería dividido entre los herederos.

La parte apelante sostiene que este convenio no pudo probarse por evidencia oral (señalamiento VIII) y que la prueba fué adversa a la existencia de tal convenio (argumentación del señalamiento I).

Al tratar del señalamiento VIII, el apelante sostiene que si se llegó a un convenio en cuanto a que se distribuyera entre los herederos el posible exceso de valor, si resultaba, este convenio no fué celebrado con Suárez, y no pudo admitirse esa prueba en cuanto a él.

La alegación 6 de la demanda dice, en efecto, que entre los herederos se llegó a aquel convenio. En la número 7 se

establece que Suárez tenía conocimiento de aquel convenio. Y al contestar Suárez la demanda (pág. 36, récord) ha negado general y específicamente todos y cada uno de los hechos alegados. Se ha establecido, pues, la contienda ante la corte, sobre todos y cada uno de los hechos alegados por las partes; y todos y cada uno pueden ser objeto de prueba.

En cuanto a que se trajo prueba oral de tal convenio, podemos sostener que en este caso cabía hacerlo así.

En primer lugar, si Suárez no fué parte del convenio, no vemos cómo ahora podría sostener que lo escrito prevalece, en cuanto a él, de tal modo que no se pueda traer prueba alguna de un pacto adicional.

Pero, más que eso, nos lleva a denegar la existencia de ese error, otro razonamiento. Al hacerse esta adjudicación para pagar la deuda, si para tal fin se vende la finca, y el precio es mayor que la deuda, no cabe duda de que el exceso no corresponde a nadie que no sean los herederos; y a menos que éstos previeran el caso y renunciaran al exceso, ese valor no debe ir al adjudicatario. Nos ceñimos a los hechos de este caso concreto. En las operaciones particionales de la herencia de Manuel Falú, la adjudicación hecha a Gumersindo Falú, en este particular es así:

"Se le adjudica:

"Para que pague los quince mil dollars de la segunda baja, los tres mil dollars de la sexta baja y un mil dollars de la séptima baja, y los mil dollars del legado de Gerardo Falú:

"La finca que se describe en el inventario bajo la letra (F) de ciento sesenta y dos cuerdas de terreno y cincuenta y dos centavos de otra. Por veinte mil dollars se le adjudica."

*Para que pague* esas bajas se le hace esa adjudicación. ¿Quiere decir esto que si el adjudicatario, *para pagar las bajas* vende la finca en $26,000, debe o puede beneficiarse con la diferencia? No encontramos que la afirmativa pudiera ser excusable siquiera.

Si hubo acuerdo entre los herederos con respecto a la posibilidad de un balance a favor de la herencia (y de ese

acuerdo entendemos que hay prueba suficiente) se ha pedido probar como convenio adicional que en nada cambia, o sustituye el primitivo de adjudicación. Es cierto que no puede, por evidencia oral, probarse contra lo escrito en el contrato. Esta regla que aparece ahora fijada en el artículo 25 de nuestra Ley de Evidencia, admite las excepciones allí consignadas. Pero se trata de una doctrina que no puede ser aplicada de una manera arbitraria, ni de modo tan estricto que ella se convierta en un obstáculo al descubrimiento de la verdad.

Tratando de esta regla leemos en 22 Corpus Juris, pág. 1144:

"Quizás no hay regla de derecho o de evidencia que sea más flexible o que esté sujeta a mayor número de excepciones que la regla que impide que se ofrezca prueba oral para explicar o variar los documentos escritos. Se ha dicho que con el enorme número de excepciones existentes ha surgido mucha confusión, de suerte que el verdadero límite que debe fijarse a las excepciones depende no solamente de los hechos peculiares de cada caso, sino hasta cierto punto del sentir de los miembros de la corte. Sin embargo, podría decirse generalmente que las cortes han tratado de adaptar sus resoluciones en una u otra forma, a fin de hacer justicia en todos los casos. El resultado es que si bien las decisiones son relativamente uniformes respecto a las limitaciones y excepciones a la regla, cuando surge la cuestión de si un caso que presenta determinada relación de hechos cae dentro de la regla general, o fuera de ella, con motivo de las limitaciones o excepciones conocidas, o si está dentro de la regla debido a una de las numerosas limitaciones y excepciones a esas limitaciones y excepciones, las autoridades en muchos casos están en un verdadero conflicto."

La regla es que es inadmisible la evidencia oral para variar, contradecir, regir o alterar, los términos de un contrato escrito, en una acción fundada sobre tal escrito, entre las partes en él y sus causahabientes (véase a este propósito Chamberlayne on Modern Evidence, Tomo 5, pág. 4906).

Precisa que se den todas y cada una de las condiciones expresadas para que la regla sea aplicable. Entre las partes en el contrato, o las que de aquéllas deriven su derecho, la

regla es eficaz y cierta. Así en el caso *Nicorelli* v. *Ernesto López & Cía.,* 26 D.P.R. 55, ha dicho este tribunal con relación al artículo 25 de la Ley de Evidencia:

"Ese artículo condensa de modo admirable la doctrina expuesta por Jones y se refiere a las partes, sus representantes o sucesores en interés."

Y se cita a Jones, en *The Blue Book of Evidence,* en la página 145, Tomo tercero.

En el caso *Sarria* v. *V. Alvarez & Co.,* 38 D.P.R. 906, se aplicó la doctrina del artículo 25, Ley de Evidencia; pero se trataba de una acción entre las partes en el documento escrito, cuyo tenor se intentaba alterar o contradecir.

En este caso, uno de los demandados, el que fué parte en la división de herencia, Gumersindo Falú, no hace objeción alguna a que se pruebe, y se pruebe oralmente, la existencia del convenio acerca del exceso de precio que pudiera resultar al venderse la finca; antes por el contrario, él mismo declara acerca de ese extremo, para confirmarlo. En realidad, el privilegio de oponerse, corresponde a ese mismo Gumersindo Falú; y no es tan claro que pueda corresponder a los otros demandados, que no derivan derechos u obligaciones de esa escritura o documento de partición de bienes.

Conviene anotar aquí, que en la partición de bienes, y en la página 175 de la transcripción de evidencia, aparece el pacto de los herederos Aquilina Villanueva, Carlos Agricourt y Gumersindo Falú, para inventariar y dividir con arreglo a las bases del cuaderno particional cualesquiera otros bienes de la herencia, que previamente no hayan inventariado.

Y ahora, veamos lo que es y significa un sobrante o exceso de valor de los bienes adjudicados a Gumersindo Falú para pago de deudas, y de algún legado.

Hemos visto cómo se hizo la adjudicación. Para que Falú pagara ciertas deudas y bajas, se le da una finca de la que él ha de disponer. Pero, si al venderse esa finca resulta que se obtiene por ella un precio mayor del valor que

se le dió en inventario, y con el que fué adjudicada, ¿podría sostenerse que el beneficio de esa diferencia habrá de ser para Falú, y lo deben perder los herederos? Este extremo es importante. Ni los herederos pensaron en beneficiar a Falú graciosamente, ni esa intención aparece del cuaderno particional, contentivo del contrato de partición; y de la declaración de Falú, que parece debía ser el primer interesado en beneficiarse, aparece, por el contrario, que la intención y propósito de repartir el sobrante, si lo hubiera, entre los herederos fué expresa y clara.

El enriquecimiento de Falú por la apropiación del exceso de precio, sería algo inmoral, e ilegal. La antigua máxima "Nadie puede enriquecerse torticeramente", tendría en este caso una completa aplicación. No hay precepto legal alguno en que Falú pudiera basar su apropiación de ese exceso. *Para que pague* bajas que ascienden a $20,000, se adjudica a Falú una finca; no se le da para que aumente su participación en la herencia. Y si esto es así, podríamos decir que quizá no hubiera sido necesario ni presentar prueba del pacto entre los herederos, ya que por equidad y por justicia Falú nunca hubiera sido dueño de esa diferencia sino que ella, como parte de los valores de la herencia tenía que ser dividida entre los herederos. Realmente la posición legal de Falú, es la de un mandatario de estos herederos, a quien se ordena que pague y se le dan los medios para ello; y no podría sostenerse que el mandatario en un caso como el presente, pueda apropiarse lo que sobre del valor de los bienes que se le entregan para hacer el pago. Podría suponerse el caso de que uno de los acreedores renunciara a cobrar su crédito; y entonces no podría sostenerse que el adjudicatario de la finca para pago de deudas tuviera el derecho de hacer suya la cantidad que sobrase por consecuencia de tal renuncia.

Los señalamientos de error que se refieren a la admisión de esa prueba, no son sostenibles.

La parte apelante hace un hábil y detenido examen

de algunas declaraciones, y de lo que considera graves contradicciones de algunos testigos. Esto bajo el primer señalamiento de error, cuyo texto es así:

"Al concluir y dar por probado que la adjudicación de bienes a que se refiere la demanda se hizo sujeto a convenio alguno entre los herederos del causante Falú Benítez sobre distribución del exceso de precio porque se vendiera la finca adjudicada."

Aparte de lo que llevamos dicho, y que debe tenerse por reproducido, entendemos que en una partición de bienes hay un verdadero contrato, y lo hay lo mismo en una adjudicación para pago de deudas, que tiene mucho de un mandato. Es ley elemental de los contratos la que se condensa y resume en el artículo 1225 de nuestro Código Civil, o sea:

"Artículo 1225. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley."

No sólo a lo explícitamente convenido, sino a todo aquello que es su natural, moral o legal consecuencia, se viene obligado por el contrato. Así, Falú, a quien se adjudica una finca para pagar una suma, y quien la vende en más de esa suma, se halla obligado natural y moralmente a reintegrar a la testamentaría el exceso obtenido en la venta.

La parte apelante insiste fuertemente en las contradicciones en que incurriera Falú y otros testigos en sus declaraciones.

No puede concederse a las contradicciones tanta fuerza como se le ha querido dar. En su examen y apreciación, en la calificación de aparentes o reales, circunstanciales o de esencia, hay que dar un ancho campo al juzgador. No se resuelve un caso por un simple detalle, sino por el peso de toda la prueba, ni puede afirmarse, sin un grave examen, que el testigo que incurre en contradicción, falsea voluntariamente la verdad.

En el caso presente se ha dado gran importancia a detalles

minuciosos, que no pueden influir en la formación de un estado de conciencia y de creencia en el que juzga. Por ejemplo: el testigo Etanislao Torres habló del otorgamiento de la escritura de venta a Fernández, y de la de hipoteca a Suárez, y dijo que se otorgaron en casa del Notario Torres Solá, en Río Piedras; las escrituras aparecen suscritas en Naguabo, residencia del comprador, y deudor hipotecario; y cuando sobre este extremo se llama la atención del testigo, éste contesta que se hicieron en casa de Torres Solá, y salieron en un carro para Naguabo a firmarlas. La explicación es natural y creíble.

La falta que, como más grave, se apunta al testigo Falú, se refiere al convenio de que, caso de que la cantidad que excediera de $20,000 en precio de venta de la finca, se devolvería a los herederos, y del conocimiento que de ese convenio tuviera Suárez. Primero se le preguntó si hubo entre los herederos alguna estipulación, y contestó que no se habló nada; luego que los que sabían del convenio, eran él y Suárez; pero positivamente afirmó que fué convenido entre los herederos que el exceso que pudiera haber fuera repartido entre ellos; y que de ese convenio tuvo conocimiento el demandado Juan Suárez, que, por lo que resulta de la prueba, estaba interviniendo en la testamentaría, dando dinero, comprando intereses en ella a bajo precio, y hasta haciendo contrato de compraventa de la finca con Falú, contrato que, ignoramos por qué, fué privado, sin perjuicio de que apareciera Falú en la escritura de venta de la finca, en la que también intervino Suárez. A pesar de los contra-interrogatorios y de las evidentes confusiones del testigo, a los ojos de la corte quedó probado que existía el convenio referido, y que Suárez tenía un cabal conocimiento del mismo; y quedó asimismo suficientemente justificado que el precio de venta fué de $26,000, de los que el Sr. Fernández pagó $20,000, y se hizo una escritura de hipoteca por $6,000 a favor de Juan Suárez. Esa impresión de la prueba es la resultante del testimonio de Falú, del de Etanislao Torres, de Angel Banuchi, y de la del Sr.

Méndez Vaz. La declaración del demandado Suárez, tiende a desmentir ese testimonio; de ella aparece también que Suárez compró, por menos precio que el que tenían en la partición, créditos y legados, y que firmó un documento de compra-venta de la finca de que se trata, con Gumersindo Falú. Este documento es privado, y contiene pactos que no hemos de dejar sin citar; aparece en las páginas 205-210 de la transcripción de la evidencia. En él se dice que Falú es dueño de la finca que se describe, por adjudicación que se le hizo, para pagar veinte mil dollars que garantiza la finca con hipoteca por pagarés al portador, y que la vende Falú a Suárez por $25,000 para que Suárez pague la hipoteca "sin derecho a reclamo ni indemnización alguna en el caso que el Sr. Suárez Pérez la vendiera en mayor cantidad, pues la demasía será exclusivamente para él como así mismo si tuviera o experimentara pérdida." Extraña esta precaución, y esta forma de convenio.

De la prueba forma parte la escritura de compra-venta de la finca por D. Angel Fernández y Gumersindo Falú, en fecha 23 de septiembre de 1924; en ella interviene Don Juan Suárez Pérez. La venta aparece hecha por Falú a Fernández en $20,000, que se confiesan recibidos; y en la cláusula "Tercera" se conviene en hacer la mensura de la finca, y Falú renuncia y traspasa a Suárez Pérez cualquier número de cuerdas que resulten en exceso de las 161, con 32 centésimas que son base de la venta, o del valor de las que resultaren en exceso, y se dice que la renuncia la hace Falú en atención a que Suárez Pérez gestionó esta venta y la anunció, y no le ha podido pagar comisión, y por haber tenido que pagar Suárez gastos y honorarios de abogados. En la misma fecha se otorga por Angel Fernández una escritura de hipoteca de la misma finca, por $6,000, a favor de Juan Suárez Pérez, confesando recibida la suma. Las escrituras tienen los números de protocolo 252 y 253. Anotaremos que el documento privado de que antes se habla tiene fecha 25 de agosto de

1924, esto es aproximadamente un mes antes de otorgarse las escrituras.

Parte de la prueba es también una alegación de una demanda a nombre de Don Angel Fernández contra Gumersindo Falú y Juan Suárez Pérez, en la que el demandante dice que por la escritura No. 253 constituyó hipoteca a favor de Juan Suárez Pérez, y que los $6,000 que en ella aparecen fueron parte del precio de la finca, que había de corresponder al demandado Suárez que así lo tenía convenido con Falú, consignándose en la escritura $20,000 y en la de hipoteca los $6,000, siendo el verdadero precio de la finca $26,000. Esta demanda por lo que aparece de la prueba, fué presentada en la corte de distrito de San Juan, bajo el número civil 4152.

Don Angel Fernández, comprador de la finca, no fué traído al juicio como testigo.

Con estos elementos de prueba, no puede admitirse que la corte incurriera en los errores que se señalan bajo los números I, II y III del alegato.

Los errores señalados bajo los números IV y V, se refieren a que la corte declaró probada la confabulación entre Suárez Pérez y Falú para hacer aparecer que la finca se vendió en un precio más bajo del que en realidad se obtuvo, y defraudar a la demandante en la parte del exceso de valor que le correspondía.

Ya hemos visto el resultado de parte de la prueba. Anotamos que la parte demandada no trae otra prueba que la declaración de Suárez Pérez y el documento privado de que se ha hablado. Y en la declaración de Suárez Pérez aparece lo que sigue:

"P.—¿Quién convino la venta con el señor Fernández?

"R.—Yo mismo.

"P.—¿Y de qué son esos seis mil pesos que aparecen en la venta a favor de Ud.?

"R.—Yo le vendí al señor Ángel Fernández 161 cuerdas con 61 centavos a razón de 160 pesos cuerda que hacen veinte y cinco mil y pico de pesos.

"P.—¿Por qué no hizo constar la venta por los veinte y cinco mil y pico de pesos?

"R.—Porque el señor Falú me había hecho la venta por veinte mil pesos.

"P.—¿Y Ud. no quería hacer constar los veinte y cinco mil y entonces hizo que le otorgaran una escritura a favor suyo, reconociendo esos seis mil pesos? ¿Esos seis mil pesos son parte de la venta?

"R.—Sí, señor, pero tengo yo otros gastos.

"P.—Pero yo no hablo de gastos, yo le digo que si Ud. no quería hacer figurar otra suma.

"R.—Eso fué acuerdo entre el notario que hizo la escritura, que como a mí se me había vendido por veinte mil pesos, pues, que se hiciera la escritura en igual forma.

"P.—Pero después que Ud. compró nadie se podía meter en eso porque Ud. ni hizo constar los veinte y cinco mil y pico de pesos. . .

"R.—Porque aparecen veinte mil pesos nada más."

De toda esa prueba, nace la creencia del juez en la existencia de una confabulación, sin la que hubiera sido imposible realizar los actos que acusa la demanda. No es exigible como indispensable una prueba directa de esos hechos. Son circunstancias que se unen, se pesan conjuntamente en el ánimo del que juzga, y llevan a la conclusión que en la opinión de la corte inferior se sienta, y que es lógica y acertada.

No existen, pues, los errores apuntados.

En condiciones tales no podía dictarse otra sentencia que la que dictó la corte de distrito de San Juan, que no incurrió en el error señalado bajo el número VII, ni en otro alguno de los que se indican por la parte apelante.

*Debe confirmarse la sentencia apelada.*