Jesús García Rivera, peticionario, *v.* Tribunal Superior, Sala de Arecibo, Willis Ramos Vázquez, Juez, demandado; Juan Delgado Peraza, interventor.

*Número:* 69    *Resuelto:* 19 de diciembre de 1962

*V. Polanco de Jesús,* abogado del peticionario; *Eduardo M. Díaz Porto,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

El Juez Asociado Señor Hernández Matos emitió la opinión del Tribunal.

Jesús García Rivera, agricultor dedicado al cultivo de cañas dulces, dueño de una finca situada en el término municipal de Vega Baja, inició una acción ante el Tribunal de Distrito, Sala de Ciales, contra su vecino y colindante Juan Delgado Peraza, para recobrar de éste la suma de $2,500.00, como importe de los daños y perjuicios que alegó le causó en las plantaciones de cañas y árboles frutales de su finca, un incendio ocurrido el 26 de marzo de 1955, que se inició en la finca de Delgado Peraza y se permitió que se extendiera a la del actor. El demandado contestó la demanda negando todas sus alegaciones.

Después de numerosos incidentes, incluyendo la notificación y contestación de interrogatorios y celebración de *pre-trial*, se celebró el juicio tomando varios días de vistas. Del voluminoso expediente original sometido resulta que empezó a celebrarse el 14 de noviembre de 1956 y se terminó el 20 de marzo de 1958. La copiosa variedad de alegatos, escritos y mociones presentadas por los abogados de las partes, son

índices innegables del gran interés desplegado por ellos y de la amplia y cuidadosa presentación y defensas de sus respectivas tesis ante el Juez de Distrito, Sala de Ciales, que falló el litigio en favor del demandante por sentencia dictada el 18 de julio de 1958, imponiendo al demandado el pago de $2,272.86, las costas y $200.00 para honorarios de abogados.

Las determinaciones de hechos del Tribunal de Distrito son las siguientes:

"CONCLUSIONES DE HECHO.—

"1. El demandante y el demandado poseen fincas contiguas y en la época en que ocurrieron los hechos en esas fincas tenían plantaciones de caña, contiguas también;

"2. En la mañana del 26 de marzo de 1955, el demandante tenía contigua a la finca de caña del demandado, una plantación de nueve cuerdas de caña sin cortar y tenía además 31 cuerdas que ya habían sido cortadas en el mes de febrero anterior. Tenía además árboles frutales, palmas de coco, una cerca de alambre y un pedazo sembrado de café.

"3. En esa mañana, el demandado, con varios peones a sus órdenes, estaba en su finca contigua a la del demandante dando órdenes y permitió que su empleado Virgilio Vélez que tenía un mechón encendido en la mano diera fuego en la propia caña del demandado; este fuego continuó y más tarde entre 10:00 y 11:00 de la mañana llegó hasta la plantación de caña del demandante; pasó sobre las nueve cuerdas de caña que estaban en pie y sobre las 31 cuerdas que ya habían sido cortadas; en su paso por la finca del demandante quemó 40 árboles de china, 15 árboles de aguacates, 15 árboles de toronjas, 12 palmas de cocos, ¼ cuerda de café y el alambre puesto en 6 cuerdas de cerca.

"De acuerdo con la prueba estimamos como valor de estos daños los siguientes:

| | |
|---|---:|
| "Los 40 árboles de china | $200.00 |
| "Los 15 árboles de aguacates | 15.00 |
| "Los 15 árboles de toronjas | 75.00 |
| "Las 12 palmas de cocos | 96.00 |
| "El cuadro de café | 50.00 |
| "Las 6 cuerdas de alambre | 60.00 |
| En total | $496.00 |

"4. Las nueve cuerdas de caña del demandante debieron producirle 35 toneladas de caña por cuerda, o sean 315 toneladas; de ese tonelaje solamente pudo aprovechar 164 toneladas que le produjeron a razón de $10.29 por tonelada de caña. Dejó de percibir pues 151 toneladas que a razón de $10.29 la tonelada hacen un total de $1,553.73; sin embargo como esta caña no pudo ser conducida a la Central creemos justo y equitativo concederle como indemnización el 50% de esa suma, o sea $776.86.

"El fuego hizo necesario un cultivo más de lo regular a las cuarenta cuerdas de caña, cultivo extra que estimamos a $25.00 por cuerda, o sean $1,000 como pérdidas."

De la sentencia apeló el demandado para el Tribunal Superior, Sala de Arecibo, en el que señaló como errores (1–2) la admisión de las declaraciones de Francisco Méndez y Bienvenido Agosto; (3) el no considerar evidencia ofrecida por el demandado; (4) el darle crédito a la prueba del demandante y (5) dictar sentencia sin base alguna en la prueba.

Sometido el caso al Tribunal Superior por la extensa Relación del Caso preparada por el Juez de Distrito—consta de 25 páginas—y las numerosas enmiendas que a la misma propuso el demandado y que en parte fueron aceptadas por aquél, y por los elaborados alegatos de ambas partes, el Tribunal Superior, Sala de Arecibo, el 23 de diciembre de 1959 confirmó la sentencia apelada, considerando que no se había cometido error alguno, exponiendo separadamente los fundamentos de hecho y de derecho que lo indujeron a "desestimar la apelación quedando con su fuerza y vigor la sentencia apelada."

Solicitó el demandado la reconsideración, insistiendo en la comisión de los errores previamente señalados en su alegato y repitiendo, sustancialmente, su argumentación anterior. Se opuso el demandante a la reconsideración del fallo.

El 11 de noviembre de 1960, opinando que los errores 1, 3, 4 y 5, habían sido cometidos—contrario a lo que había determinado en su sentencia del 23 de diciembre de 1959—dictó el Tribunal Superior una nueva sentencia "revocándose a sí misma y revocando la sentencia dictada por la Sala de Ciales

del Tribunal de Distrito", declarando sin lugar la demanda e imponiéndole al demandante, además de las costas, el pago de $300.00 por concepto de honorarios de abogado.

Para revisar esa segunda sentencia, a petición del demandante, libramos el correspondiente auto de certiorari. Las partes interesadas nos sometieron el recurso con la presentación respectiva de alegatos.

Sostiene el peticionario que el Tribunal Superior, Sala de Arecibo, a) erró al declarar inadmisible el testimonio del testigo Francisco Méndez, y b) al desestimar totalmente la demanda respecto a todas las pérdidas sufridas por el demandante.

El Tribunal Superior, en su segunda sentencia, resolvió que el de Distrito había cometido grave error al tomar en consideración el testimonio de don Francisco Méndez como prueba de los daños y perjuicios, porque era inadmisible debido a que su declaración la dio "a base de información tomada de unos récords de la Central Plazuela respecto al tonelaje y rendimiento", que no fueron traídos a juicio, violándose así el Art. 24 de la Ley de Evidencia sobre la prueba del contenido de un escrito y el derecho a contrainterrogar de la otra parte.

Hemos leído la detallada exposición que hizo el Tribunal de Distrito, Sala de Ciales, en su Relación del Caso, de la declaración de este testigo. La misma constituye evidencia material y pertinente para probar la existencia de los daños y perjuicios realmente sufridos por el demandante con motivo del fuego que el propio demandado, para su beneficio, ordenó que se pegara en su finca y a sus cañas para cortarlas, y que, más tarde, se permitió que se extendiera a las plantaciones de cañas y árboles frutales del fundo contiguo propiedad del demandante.

Don Francisco Méndez, a la fecha en que declaró, era de profesión ingeniero agrónomo, con una experiencia de más

de veinte años; su capacidad como tal fue aceptada por el abogado del demandado—véase expediente original, folio 48—; desde el año 1926, es decir, desde hacía 30 años, había sido jefe de cultivo, administrador y jefe de colonos de las Centrales Cambalache y Plazuela.

Declaró, entre otras cosas, que visitó la finca del demandante el 2 de abril de 1955, siete días después de ocurrido el fuego; describió el estado y condiciones de la propiedad en ese día; estimó, como perito agrónomo, a base de su experiencia, la probable producción de toneladas de cañas de esa finca, las cuerdas quemadas de cañas en pie, el daño ocasionado en 31 cuerdas de retoños en proceso de crecimiento; declaró sobre la diferencia en costos en cultivos de retoños de caña quemada y retoños de cañas que no han sido quemadas y que quedan protegidos por la paja de caña; lo que se gasta por desyerbos y los desyerbos necesarios en cada clase de cultivo. Como Jefe del Departamento de Colonos de la Central conoce "el sistema de computar la caña a los colonos." Tenía en su poder una nota de los promedios de cañas quemadas pertenecientes al demandante y dio los detalles sobre sus quintales de azúcar, el rendimiento, precio promedio, bonificación, retención de por ciento, bonos por mieles, arrastre, compensación, y calculó lo que las cañas le hubieran producido y las probables pérdidas. Terminó diciendo:

"Yo me limité a calcular la diferencia en los gastos de cultivo por cualquier otra cosa que pudiera estimar, eso sería un poco de especulación; dado que esos retoños producen menos al año siguiente; el hecho de que se hayan quemado representa un corte más, como si se le hubiera dado un corte más porque las cañas que se van cortando van dando menos y rinden menos, cuando llegan a un límite se reemplazan. Las 31 cuerdas, la caña quemada estima, la estima en $1,914.01 más $50.00 por el cuadro de café. Dice que los árboles de toronjas, palmas de cocos, chinas, los vio cuando se estaban quemando. Estimó un cuadro de café valía $50.00; 10 cuerdas lineales de cerca $60.00; él estima por la caña quemada $1,914.01; por las cercas $60.00."

En el contrainterrogatorio dio más detalles sobre los daños; habló sobre el rendimiento de las cañas y de los distintos factores que en el mismo intervienen, y sobre las dificultades en el cultivo, corte y arrastre de cañas.

Hizo referencia, en el curso de su declaración, a las tasaciones que hacían "los inspectores de tasación en el mes de diciembre", de las cañas de los colonos, y a los récords de la Central sobre los retoños. Pero estas referencias las hizo en el curso de su testimonio, más bien para dar a conocer otras fuentes de conocimiento sobre datos de producción, y que él conocía también por su condición de Jefe del Departamento de Colonos. Su testimonio no consistió en reproducir el contenido de récords; fue una manifestación de sus experiencias personales, de su criterio como perito y del conocimiento directo adquirido al inspeccionar personalmente la finca del demandante.

Con mucho acierto el Tribunal Superior, Sala de Arecibo, en su primera opinión y sentencia, de fecha 23 de diciembre de 1959, al resolver que era admisible el testimonio de este perito y que no se había cometido error alguno en admitirse por el Tribunal de Distrito, hizo constar:

"Se imputa error por admitir la declaración de Francisco Méndez alegando que no teniendo *records* a la mano declaró sobre hechos que no le constaban personalmente, olvidando el demandante que este testigo compareció como perito agrónomo, que trabajaba en la Central que refaccionaba en parte al demandante; que como tal perito, constituido en la finca a los 8 días del fuego, declaró sobre las condiciones de la propiedad, su clase de terreno y su capacidad para producir caña en distintas etapas de crecimiento y las distintas clases de terreno y que siendo el demandante colono de esa Central y el testigo el Jefe del Departamento de Colonos de la misma y conocedor de la producción que había tenido la propiedad del demandante, de los cultivos que había hecho para ese año, declaró entonces sobre todos esos extremos y de lo que podía producir de acuerdo con las circunstancias variadas que explicó. No fue un testigo ordinario desconocedor de esos hechos, ya que, además de perito, visitó la

finca donde ocurrió el fuego, vio lo quemado, apreció lo que pudo producir, los árboles quemados, las cuerdas de cerca que se habían quemado y el costo de poner esas cercas y los gastos adicionales que se originan para producir caña nueva en terrenos que han sido objeto de fuego.

"No consideramos que este error se haya cometido."

En *Costas* v. *G. Llinás & Co.*, 66 D.P.R. 730, 742 (1946), se impugnó la suficiencia de un testimonio pericial porque "no podía basarse en récords exactos", es decir, porque el perito no había hecho referencia a récords. Respecto a ese planteamiento, en parte, se dijo: ■

" . . . Los demandados atacan la conclusión de la corte sobre este punto, fundándose en que no debió dar crédito a esta declaración por estar basada en la opinión del perito sobre lo que debió costar la producción de la caña en cuestión considerando la calidad del terreno, cantidad de caña cultivada cada año, precio de jornales, abonos, etc., y no en récords exactos de lo realmente gastado. El mero hecho de que el perito no pueda basarse en récords exactos no hace inadmisible esa evidencia. El peso probatorio de esa declaración dependerá especialmente del crédito que a la corte merezca el perito por sus conocimientos en la materia,([12]) por la oportunidad que éste tuviera para poder emitir una opinión con conocimiento de causa y por la forma en que declare. 2 Wigmore, Evidence (3ra. ed. 1940), sección 677.

"Escolio 12.—De la prueba resulta que Francisco Colón Moret se ha dedicado al cultivo de caña desde el año 1924; que ha poseído fincas de su propiedad y las ha cultivado; que ha sido Jefe de Cultivo y Consultor Agrícola de varias centrales entre ellas, Mercedita, Yabucoa, Pasto Viejo, Coloso y Lafayette; que ha estado en esas actividades durante 24 años y está familiarizado con el costo de cultivo y producción de la caña de azúcar, especialmente en zonas similares a las de la comarca donde radica la finca que motiva este pleito."

Si la parte demandada hubiera tenido interés en conocer tales récords, o si hubiera dudado de la exactitud de las referencias que el perito hizo a los mismos el día 14 de noviembre de 1956 en que declaró, tiempo y oportunidades de sobra tuvo para inspeccionar, tomar copias y producirlos

como evidencia, puesto que el juicio vino a terminarse el 20 de marzo de 1958. Pudo traerlos, en la misma forma en que trajo copias certificadas de las planillas de ingresos del demandante correspondientes a los años 1955 y 1956, y que sometió al Tribunal de Distrito en su escrito de 21 de mayo de 1958, titulado "Ofrecimiento de Evidencia Documental."

Consideramos suficiente la prueba presentada por el demandante ante el Tribunal de Distrito, para sostener el fallo que éste dictó. La prueba del demandado no podía impedir que prosperara la demanda.

Los errores 3, 4 y 5 señalados por el demandado ante el Tribunal Superior, Sala de Arecibo, que en su primera sentencia éste los da por no cometidos, pero que en su segunda sentencia sostiene que en efecto lo fueron, se refieren a alegadas contradicciones en que incurrieron testigos del demandante. La mejor demostración de que tales alegados errores carecían de importancia o de que no se cometieron, se encuentra en los párrafos de la primera sentencia del Tribunal Superior, referentes a los mismos errores y que dicen así: ▪

"De acuerdo con el caso del *Pueblo* v. *Flores* una equivocación de un testigo puede ser cuestión que afecte la credibilidad que pueda merecer al Tribunal pero si no se demuestra parcialidad prejuicio o manifiesto error en la apreciación en conjunto de la prueba ello no es motivo para revocar, y nada de esto se ha demostrado. ▪
"*Pueblo* vs. *Flores*, 47 D.P.R. 831–833.
"No se resuelve un caso por un simple detalle, sino por el peso de TODA LA PRUEBA, ni puede afirmarse, sin un grave examen, que el testigo que incurre en contradicción, falsea voluntariamente la verdad. (Mayúsculas nuestras.) ▪
"*Villanueva* vs. *Suárez*, 41 D.P.R. 40, 50.
"En su examen y apreciación, en la calificación de aparentes o reales contradicciones, circunstanciales o de esencia, hay que darle un ancho campo al juzgador.
"*Villanueva* vs. *Suárez*, 41 D.P.R. 40, 50.
"En el cuarto error se querella la apelante que el Tribunal inferior erró al darle crédito a la prueba del demandante y lo

hace así por considerar que esa prueba está llena de contradicciones y cita para ello contradicciones en la declaración de Julio Bithorn, Francisco Méndez, Benito Maldonado, Bienvenido Agosto, Daniel Agosto y el propio Jesús García.

"Comenzaremos por citar algunas de estas alegadas contradicciones. El demandante declaró que tuvo pérdidas por $3,496.00 y el demandado llama contradicción porque reclamó solamente $2,500.00. La demanda se originó en la Corte de Distrito cuya jurisdicción alcanza solamente $2,500.00 y a eso se contrajo el demandante. Antiguamente la Corte Municipal, hoy de Distrito, tenía jurisdicción hasta $500.00 y se ha resuelto que si una parte que sufrió mayor pérdida comparece ante el Tribunal Municipal reclamando sólo $500.00, no por eso pierde el derecho de esa reclamación de $500.00, pues bien pudo renunciar al resto. ■

"Con respecto a que se llamara a declarar como testigo del demandante al propio demandado Juan Delgado Peraza, ello podía hacerse así de acuerdo con la Regla 43 de Enjuiciamiento Civil vigente para aquella época.

"Y si continuáramos haciendo el examen de los demás puntos que suscita el apelante llegaríamos a la misma conclusión de que era el juez el llamado a apreciar la prueba y que el error no imputa manifiesto y grave error de derecho, ni pasión, prejuicio o parcialidad. Hemos leído la relación del caso, las alegaciones de una y otra parte y los preceptos legales que puedan aplicarse al mismo y estamos convencidos de que no existe este error.

"El quinto error es en el sentido de dictarse sentencia contra el demandado sin base alguna en la prueba para dictarla.

"Alega el demandante que se declara probado un fuego y que para ello el demandante sólo ofreció prueba de que fueron los obreros del demandado los que iniciaron el fuego y no el demandado personalmente. El testigo Benito Maldonado declaró que el día del fuego trabajaba con Juan Delgado Peraza; que él llegó al trabajo a las 7:00 de la mañana; que don Juan Delgado llegó primero que él y los demás a disponer el trabajo, que dejó a Virgilio Vélez, el capataz, con un mechón de gas dando fuego a las 6:00 de la mañana y que le dijo 'usted se queda aquí dando fuego que yo me voy' y que el fuego empezó poco a poco; Daniel Agosto se expresa en esos o parecidos términos; que cuando daba fuego Virgilio Vélez, Juan Delgado Peraza estaba allí montado en un caballo.

"Como el juez es el llamado a dar crédito a las declaraciones de los testigos, éste es el llamado a observar sus movimientos, sus gestos, etc., leyendo la relación del caso encontramos el siguiente pasaje:

"El testigo del demandante Daniel Agosto, en la repregunta, se dirigió al abogado del demandado y le dijo 'tengo otra cosa para explicarle, el lunes de esta semana me mandó a buscar el señor Juan Delgado allá en mi trabajo; yo fui y me quería para comprarme por $150.00' . . . y que el demandado le dijo 'bueno ésta es la declaración que yo te voy a dar, tú no me viste allí quemando; te doy $150.00, etc. etc.'

"Como esta declaración la extrajo el demandado fuera del interrogatorio directo, ella era suficiente para el juzgador estar acertado en la conclusión con respecto a toda la prueba y en especial a la participación del demandado en el origen del fuego.

"En cuanto a la cuantía de los daños el Tribunal tuvo ante sí las declaraciones de Francisco Méndez, del propio demandante y de Darling Ruiz, testigo éste, que trabajaba en la Central Plazuela, era el encargado de cuentas y liquidaciones y como tal testigo relató la caña entregada por el demandante, el precio promedio de azúcar, el valor de la cosecha, liquidaciones provisionales, reliquidaciones, compensaciones, etc. Consideramos que toda esta prueba fue suficiente para resolver el caso en la forma en que lo fue por el juzgador.

"Se desestima el recurso."

POR TODO LO EXPUESTO, *procede que se revoque la segunda y última sentencia dictada por el Tribunal Superior, Sala de Arecibo, fechada el 11 de noviembre de 1960, quedando con todos sus efectos la que primeramente dictó el 23 de diciembre de 1959 confirmando en todas sus partes la primitiva sentencia del Tribunal de Distrito, Sala de Ciales, del 18 de julio de 1958.*