EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CATALINO SANTOS CORNIER, acusado y apelante.

*Número:* CR-67-289    *Resuelto:* 2 de abril de 1969

*Héctor Lugo Bougal,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Catalino Santos Cornier fue convicto del delito de acometimiento grave consistente en haber acometido a Luis Torres Santiago con un revólver haciéndole un disparo sin lograr herirlo. Se le impuso una multa de $100.

Apunta que el tribunal de instancia incidió al no conceder al apelante el beneficio que decreta la ley cuando existe duda razonable y fundada.

De acuerdo con el récord, el apelante y su hijo Catalino Santos Matos fueron acusados, cada uno, de infringir el Art. 8 de la Ley de Armas y de acometimiento grave. Santos Matos fue acusado, además, de infringir el Art. 6 de la referida ley. El jurado encontró a Santos Matos culpable de la infracción al Art. 8 de la Ley de Armas y exoneró al apelante de tal infracción. El juez encontró a ambos culpables de acometimiento grave y a Santos Matos de infringir el Art. 6 de la Ley de Armas.

El juez de paz Juan Rosario Torres testificó que en la carretera de Ponce a Peñuelas se detuvo al ser llamado por

uno de un grupo situado a la orilla de la carretera como a tres o cuatro kilómetros de Ponce. El que lo llamó a su vez le pidió a Santos Matos que bajase de una loma cercana donde "tenía cierta discrepancia con un señor . . . ." Aquél bajó. Tenía un revólver con tres balas. Se lo dio al apelante y éste lo entregó al testigo quien identificó el arma.

Luis Torres Santiago testificó que con motivo de él llevarse a la hija del apelante el día de los hechos, el apelante le hizo un disparo desde la orilla de la carretera; que él echó a correr y entonces Santos Matos le arrebató el arma al apelante y le hizo dos disparos más al testigo. No lo hirieron.

La testigo Esperanza Torres Santiago testificó ser la esposa de Torres Santiago; que acompañó a los Santos y a la esposa del apelante a buscar la hija de ésta y a Torres Santiago; que cuando los encontraron el apelante le disparó dos tiros a Torres Santiago y luego Santos Matos le quitó el revólver al padre y le disparó dos tiros más a Torres Santiago. Todos los tiros fueron al aire. Al preguntársele si había declarado que "Ellos dispararon al aire y entonces mi esposo fue corriendo", contestó que "Así mismo fue."

El apelante testificó que su hijo fue el que disparó el revólver al aire y lo hizo con el objeto de que Torres se parara. Admitió que el revólver era suyo, y estaba registrado a su nombre pero su hijo lo tomó.

■ Aunque la norma es no intervenir con la apreciación de la prueba por el tribunal de instancia en ausencia de que se demuestre que actuó con pasión, prejuicio o parcialidad, las siguientes circunstancias nos mueven a concluir que dicha apreciación fue errónea; que debemos revocar la sentencia en este caso y exonerar al apelante:

■ (a) El apelante es un comerciante de más de 74 años; testificó tener el revólver registrado a su nombre de lo que se infiere que era una persona sin antecedentes penales. Su

testimonio es mesurado, lógico y creíble. Testificó que como nueve meses antes, Torres se llevó a la incapacitada mental, hija del apelante, a un pasto y abusó de ella; que en la ocasión de los hechos que motivan esta causa, volvió Torres a llevársela. Así lo admitió el propio Torres en la silla de los testigos. Testificó el apelante que:

"Salí en seguida, tanto la mamá como yo y el hermano a buscarla. Como no la encontrábamos nos paramos en la carretera más allá de la escuela; entonces pasaba él [Torres] en un carro con la muchacha y cogió por la carretera y la llevó allá a Peñuelas. Entonces yo llamé al Cuartel para que vinieran a coger este hombre que había cogido una muchacha a la mala y se la había llevado, para que la cogieran y me la trajeran, pero no apareció nadie. No apareció la Policía ni nadie. Entonces cogimos un carro que pasaba y nos fuimos detrás; entonces cuando íbamos un poco para alante venía el carro que había llevado a la muchacha. Le preguntamos que dónde había dejado los pasajeros . . . . Entonces llegamos a la cuesta esa en el Pastillo y entramos a buscar en las malezas.

La Corte:

¿ Buscando a su hija?

Sí, señor. También la nena chiquita mía iba. Entonces el al llegar al río una muchachita que hay por ahí también que iba con nosotros los encontró a ellos debajo de la carretera. Entonces dijo: 'Mira, aquí está el hombre' dejo la muchacha.

Defensa:

¿ Dónde estaba?

En la maleza.

¿ Con su hija?

Sí, debajo de la carretera. Entonces cuando llamé a la muchacha se dio cuenta que era yo, entonces arrancó a correr. Entonces el hijo mío salió para cogerlo. Entonces al llegar arriba se agolpeó él que andaba borracho.

Hubo unos disparos allí, quién los hizo?

El hijo mío hizo unos disparos al aire para que él se parara."

Cuando se le pregunta al apelante con respecto al revólver testifica que es suyo; que lo tiene registrado; que fue su hijo quien lo tomó, lo llevó al lugar de los hechos y quien hizo

los disparos al aire para que Torres se parara; que en el lugar de los hechos "No tenía revólver ninguno; si llego a tener revólver—yo no me meto con nadie—pero sabe Dios. ¿Usted sabe lo que es tener una hija que hace 13 años está así [incapacitada mental] y que venga a pasarle eso . . . ."

(b) El juez de paz Jorge Rosario Torres, quien no había visto antes al apelante, testificó que Santos Matos tenía el arma; que el apelante se la pidió y al recibirla se la entregó al testigo y entonces le explicaron el problema que tenían; que el apelante "Simultáneamente me explicó lo que había sucedido en aquel momento, muy cortésmente . . . ."

(c) En contraste con lo anteriormente expuesto, aparece del récord que Luis Torres Santiago había sido convicto de ataque para cometer asesinato, y acusado de haber violado previamente a la misma incapacitada que admite se llevó en la ocasión que dio lugar a esta causa. Torres testificó que era soltero. Luego dijo que Esperanza Torres era su esposa; que él se llevó la incapacitada mental, hija del apelante, y que cuando la encontró "por el sitio de Peñuelas, el señor andaba con un revólver y me hizo un disparo . . . a mí y a ella"; que entonces Torres echó a correr y el hijo del apelante le arrebató el revólver al padre y le hizo dos disparos más al testigo. Negó que el apelante insistiera en que su hijo entregase el arma. Luego de leérsele su declaración al fiscal, testificó que "Hay una cosa en la declaración que mentí, que no me acordé de momento, por eso dije que no me acordaba . . . . Hay una parte que dice que hubo uno que le esquivó la mano. Esa es le parte que no me acordé."

(d) Esperanza Torres, esposa o concubina de Torres, primero testificó que tanto el apelante como su hijo le hicieron dos disparos a Torres. En contrainterrogatorio dijo que tales disparos fueron hechos al aire, o sea, no a la persona de Torres como había indicado previamente. Al preguntársele si tenía interés en que no metieran a Torres a la cárcel contestó "Seguro que no." Dijo haber visto a otra persona en

el lugar de los hechos pero no vio que ésta desviara el brazo del apelante como había indicado Torres.

El testimonio de Torres, maleante de antecedentes penales, que a pesar de haber sido acusado por violar a la perjudicada anteriormente admitió sin ambages que se había vuelto a llevar a esa infeliz en la ocasión que motivó esta causa, no merece crédito. Dijo que vio a Santos Matos arrebatarle el revólver al apelante. No es esto creíble pues antes había testificado que al dispararle el apelante, el testigo echó a correr y se situó como a 300 metros desde el lugar de los hechos. De manera que necesariamente se alejaba rápidamente de espaldas al apelante y a su hijo y no podía observar lo que ocurría entre ellos. El mismo así lo confirma cuando al preguntársele si al aparecerse el grupo originalmente él vio al apelante, al hijo, la madre, otra hijita y otra persona más, contestó que "Bueno, yo no me fijé porque yo iba corriendo, entonces apareció el juez." De este testimonio deducimos que cuando llegó el grupo a donde se encontraban Torres y la incapacitada aquél echó a correr y que los disparos se hicieron mientras él continuaba corriendo de manera que Torres no estaba en condiciones de haber visto quién disparó.

Esperanza Torres se contradijo en el curso de su testimonio. Además, del mismo se puede inferir que su propósito al testificar era evitar que su esposo Luis Torres Santiago fuese a la cárcel. De ahí que, a nuestro juicio, no puede sostenerse la convicción en este caso a base de su testimonio.

*En vista de lo expuesto, se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de Ponce, en 6 de agosto de 1965, y se absolverá al apelante.*

El Juez Presidente Señor Negrón Fernández disintió. El Juez Asociado Señor Rigau emitió voto disidente en el cual concurre el Juez Asociado Señor Torres Rigual. El Juez Asociado Señor Santana Becerra no intervino.

—O—

Voto disidente del Juez Asociado Señor Rigau con el cual concurre el Juez Asociado Señor Torres Rigual.

San Juan, Puerto Rico, a 2 de abril de 1969

Al apelante le impusieron una multa de $100.00 por hacerle un disparo de revólver a otro ser humano. La controversia es estrictamente una de apreciación de la prueba. No creo que se justificar revocar la apreciación que de la prueba hizo el tribunal de instancia. Ya el Juez Asociado Señor Torres Rigual en un voto suyo, con el cual hemos concurrido varios Jueces de este Tribunal, planteó este problema. (Voto del Juez Torres Rigual en *Pueblo* v. *Ayala Ortiz*, 97 D.P.R. 168 (1969). Creo que este Tribunal debe ejercer su poder para revocar en los hechos con un gran sentido de autodisciplina.