EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.*
EFRAÍN ESPINET PAGÁN, acusado y recurrido.

Número: O-80-158 *Resuelto:* 31 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General, y Américo Serra, Procurador General Auxiliar,* abogados del peticionario; *Martín González Vázquez,* abogado del recurrido.

PER CURIAM: En el caso de epígrafe el tribunal de instancia ordenó la supresión de 9,500 libras de marihuana en posesión y custodia del acusado por el fundamento de que éstas se ocuparon en virtud de un allanamiento ilegal sin mediar orden previa. Originalmente confirmamos dicho dictamen mediante sentencia por estar igualmente dividido el Tribunal. *Pueblo* v. *Espinet Pagán,* 110 D.P.R. 70 (1980).

Posteriormente el Procurador General ha comparecido en moción de reconsideración. A los fines de evaluar los méritos de la moción interpuesta concedimos al acusado recurrido un término de 20 días para que compareciera a exponer lo que en derecho correspondiera y estimara pertinente. Éste no ha comparecido. Resolvemos.

I

Hemos analizado nuevamente la evidencia obrante en autos y las circunstancias particulares del caso y estamos convencidos que debemos reconsiderar. Nos explicamos.

La prueba presentada tendió a demostrar que en respuesta a dos confidencias sobre la estadía de un prófugo conocido por "Bengie" en la finca de los Pomales en el Barrio Pueblito del Carmen del Municipio de Guayama, varios agentes se personaron a la Carr. Núm. 115 desde donde se divisaba una estructura en dicha propiedad. Mediante la utilización de un telescopio lograron ver al aquí recurrido Espinet en los alrededores de dicha estructura y de buena fe creyeron que éste era el prófugo Bengie objeto de la requisitoria. Movidos por esa impresión entraron a la finca pasando por entre unos alambres de púas y se dirigieron al lugar para proceder a efectuar el arresto del supuesto evadido. Al aproximarse al lugar, Espinet se percató de la presencia de los agentes y salió corriendo hacia el interior de la estructura. Uno de los agentes logró darle alcance, agarrándolo por las piernas, y al caer ambos sobre el balcón localizado frente a la puerta

de entrada, que estaba abierta, el agente pudo observar cerca de la entrada dos sacos abiertos que conspicuamente contenían picadura y semillas de marihuana. Además percibió un fuerte olor característico de esa sustancia. Como consecuencia, inmediatamente los agentes procedieron a penetrar en la estructura encontrando un número sustancial de sacos con picadura de marihuana —en total 9,500 libras— y semillas regadas por el piso y otros utensilios propios relacionados con la preparación y distribución al detal del material delictivo (balanza y papel de estraza). Ante esa situación Espinet admitió que esa marihuana no era de él, que le habían pagado por cuidarla y, además, que en esa tarea tenía como compañero a un tal "Joe" y que éste había salido para un negocio en el Pueblito del Carmen.

Al declarar con lugar la moción de supresión el tribunal a quo esencialmente basó su razonamiento en que los agentes del orden público debieron haber obtenido, antes de entrar, una orden de allanamiento judicial y que la entrada al lugar con el propósito de arrestar al evadido Bengie fue tan solo un pretexto para eludir la exigencia de tal orden. Dicho foro, al dirimir la credibilidad de los testigos, dio gran importancia a algunas contradicciones y omisiones de los agentes que efectuaron el arresto y se incautaron del material, a saber: (1) que el Agente Pomales atestara que recibió personalmente al confidente, pero sus compañeros mencionaron en sus declaraciones que fue el Sargento Flores quien telefónicamente recibió la confidencia; (2) que los agentes se percataron de la requisitoria del prófugo, aun cuando un memo sobre la confidencia no mencionaba su nombre, y ningún agente mencionó haber visto otra requisitoria con la descripción parecida a la de ese prófugo; (3) que la requisitoria del prófugo tenía una fotografía imposible de distinguir por lo borrosa, y que de tan solo verla, concluyeron que se trataba del prófugo Bengie, a pesar de no traerla con ellos

ni haberlo visto antes; (4) que los agentes llevaran un telescopio, sin explicar sus razones ni mencionarlo en sus declaraciones previas; (5) lo difícil que resultó distinguir unas personas situadas cerca de la estructura durante una inspección ocular celebrada, en contraste con la alegada percepción con que los agentes apreciaron el físico de la persona que se encontraba allí el día del registro; y (6) el que dichos agentes estuvieran adscritos a la Unidad de Drogas de la Policía.

 No compartimos el criterio del tribunal de instancia. Las contradicciones de los agentes en cuanto a quién en realidad recibió la confidencia, si la hubo o no, y en cuanto a llevar el telescopio no convierten tales declaraciones en increíbles o improbables. *Pueblo* v. *Arroyo Núñez*, 99 D.P.R. 842 (1971); *Pueblo* v. *Maysonet Arroyo*, 98 D.P.R. 60 (1969). Cabe señalar que el Ministerio Público explicó que esa confidencia la "recibió la policía en dos fechas distintas, el 14 de marzo por el Agente Pomales y el 16 de marzo de 1978 por el Sargento Flores". (A. O., Memo 1 de mayo de 1979, pág. 6.) Tampoco milita en contra el que los agentes no llevaran la requisitoria al lugar del avistamiento. Ello no quiere decir que no podían identificar al evadido. Lo razonable es que los agentes, por ser personas preparadas y entrenadas en labores investigativas, al examinar las fotografías de Bengie —una de ellas completamente clara— retuvieran en sus mentes los elementos descriptivos más esenciales del sujeto.

En cuanto al aspecto de la inspección ocular, aunque importante, en las circunstancias en que fue efectuada, resulta de dudoso valor evidenciario. Ésta se efectuó en un día nublado y lluvioso, situación opuesta a cuando ocurrieron los hechos, en que estaba claro y soleado. Aun con estas diferencias adversas, no hubo impedimento para que la juez, el fiscal y el abogado de la Defensa pudieran en ocasiones visualizar y reconocer a una de las personas situadas en dicho lugar para fines de la inspección. (T.E.,

págs. 2–3.) Por consiguiente, la declaración de los agentes en el sentido de que con el telescopio pudieron ver en el lugar a una persona, y que ésta se les parecía a la que habían visto en la requisitoria, no debe ser descartada. Finalmente, el pertenecer los agentes a la Unidad de Drogas no era ni es impedimento legal para que se involucraran y participaran en la gestión.

Reiteradamente hemos proclamado el principio que obliga a este foro a respetar las determinaciones de hecho de un tribunal de instancia cuando éstas tienen apoyo en la prueba que tuvo ante sí. A pesar de lo sabio de esta norma, cuando se demuestra que un tribunal ha actuado con pasión, prejuicio, parcialidad *o que ha errado al apreciar la evidencia*, no hemos vacilado en dejar sin efecto sus determinaciones.[1] Esta última es la situación del caso de autos. Aquí el tribunal erró al apreciar la prueba.

Una vez disipadas y superadas las anteriores discrepancias, aflora como hecho demostrado el que respondiendo a dos confidencias, agentes de la Policía se personaron a la Carr. Núm. 115, y con un telescopio en un día completamente claro y soleado observaron que en la finca los Pomales de Guayama se encontraba una persona cerca de una estructura que en dicha finca existía, que en su apariencia y contextura física coincidía con el prófugo Bengie. Bajo estas circunstancias los agentes, actuando de buena fe, podían proceder, como lo hicieron, a penetrar en la finca para arrestar al presunto prófugo, aun cuando el que allí estaba en realidad resultó ser otro individuo: Espinet. Esas circunstancias, unidas al diligenciamiento de la orden de arresto previo contra Bengie convalidan la legalidad de la incursión, registro e incautación de la marihuana.

---

[1] *García* v. *A.F.F.*, 103 D.P.R. 356 (1975); *Ruiz* v. *San Juan Racing Assn.*, 102 D.P.R. 45 (1974); *Prieto* v. *Maryland Casualty Co.*, 98 D.P.R. 594 (1970); *Pueblo* v. *Ortega Otero*, 97 D.P.R. 477 (1969); *Pueblo* v. *Santos Cornier*, 97 D.P.R. 193 (1969); *Ortiz Rodríguez* v. *A.F.F.*, 94 D.P.R. 546 (1967); *Maryland Casualty Co.* v. *Quick Const. Corp.*, 90 D.P.R. 329 (1964); y *Sanabria* v. *Sucn. González*, 82 D.P.R. 885 (1961).

## II

■ Más aún, presumiendo que *parte* de lo declarado por los agentes fuese falso no hay motivo para que se rechaze la totalidad de lo declarado. En *Pueblo* v. *López Rivera*, 102 D.P.R. 359, 365–366 (1974), reconocimos que el que un testigo falte a la verdad en una parte de su testimonio no conlleva la aplicación absoluta de que deba descartarse el resto de la declaración. Añadimos, además, que la máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltara a la verdad respecto a uno o más particulares. *Pueblo* v. *Méndez Feliciano*, 90 D.P.R. 449 (1964); *Pueblo* v. *Nazario*, 87 D.P.R. 130 (1963). En otras palabras, es imprescindible armonizar toda la prueba y analizarla en conjunto a los fines de arribar al peso que a la misma deba concedérsele. No podemos resolver un caso por detalles que no van a la médula de la controversia. *García Rivera* v. *Tribunal Superior*, 86 D.P.R. 823 (1962).

Como fundamento adicional para descartar el testimonio de los agentes, el tribunal estimó que la declaración, en el sentido de que dos sacos de marihuana estaban cerca de la puerta a la plena vista, era estereotipado. Discrepamos.

■ Un testimonio honesto no puede calificarse de estereotipado por el simple hecho de que exponga unas realidades fácticas que puedan formar parte del comportamiento usual y de las reacciones de algunas personas al confrontarse con agentes del orden público. Ciertamente debemos evitar caer en la superficialidad de atribuirle a toda mente y conducta humana presunciones de un proceder automático. Hay delincuentes que realizan el acto delictivo a plena luz del día, sin ocultarse, y otros de manera contraria. Ante determinado reclamo policial pue-

den responder de distintas maneras: unos huyen; otros permanecen serenos con la mayor naturalidad; otros se desprenden, a como dé lugar, del material delictivo; otros espontáneamente admiten sin reservas sus actuaciones, etc. La dinámica de la conducta delictiva, aunque diferente en sus protagonistas, medios y en un sinnúmero de circunstancias, presenta en el fondo características básicas comunes. Lo importante es detectar cuándo esas discrepancias, producto de las diferencias humanas, están presentes en determinada actuación. Con esta perspectiva en mente es que hemos evaluado el testimonio de los agentes en este caso. Así, el que se ateste que se ocupó la evidencia por estar a plena vista, o por haber sido abandonada o lanzada al suelo no conlleva que estemos ante un testimonio estereotipado que torne ilegal la misma. La calificación de que un testimonio es estereotipado, de ordinario surge cuando se ocupa evidencia en alguna de esas modalidades, y la declaración de los agentes se limita a probar los elementos mínimos del delito. *Pueblo* v. *González Del Valle*, 102 D.P.R. 374, 377 (1974). En el caso de autos esta no fue la situación. Aquí los agentes declararon la forma y manera en que tuvieron el acceso a la puerta de entrada. Además, atestaron sobre la existencia de un sinnúmero de otros objetos junto a los dos sacos de marihuana. Los detalles totales del caso, unidos a la localización de la estructura, impiden que el testimonio de los agentes pueda ser calificado de estereotipado. *Pueblo* v. *González Del Valle*, supra, pág. 378; *Pueblo* v. *Almodóvar*, 109 D.P.R. 117 (1979).

### III

Finalmente, el tribunal a quo estimó que los agentes, desde el momento en que verificaron la presencia del supuesto prófugo, pudieron haber conseguido la correspondiente orden "sin poner en peligro su seguridad ni

perder el rastro del sospechoso ya que pudieron establecer vigilancia del lugar". No compartimos ese criterio.

■ En las circunstancias apuntadas era innecesaria la orden de registro previa, pues existía una de arresto contra el prófugo Bengie, que autorizaba a los agentes a adoptar las medidas conducentes a tal fin, inclusive penetrar en propiedad privada y forzar la entrada a una estructura. Regla 17 de Procedimiento Criminal.[2] Es dudoso el aserto del tribunal de que la búsqueda de dicha orden era sin perjuicio de perder a Bengie. Éste era un prófugo. Se había dado a la fuga antes. Sus antecedentes criminales lo acreditaban como una persona peligrosa, por delitos tales como acometimiento y agresión grave, violación, infracciones de la Ley de Armas, fuga, daños maliciosos y hurto de uso. Es irrazonable ante este cuadro de hechos, y lo fluido e impreciso de la situación, especular y decidir después que no había riesgo de que escapara nuevamente.

Una vez encontrados los dos sacos de marihuana en la puerta, el registro de toda la casa fue razonable y necesario, pues, ¿cómo conocer si había otras personas que pudieran poner en peligro la vida de los agentes? Ninguna persona con cierta imaginación, sentido de prudencia y autoprotección hubiese actuado de otra forma. *Pueblo* v. *Torres Resto*, 102 D.P.R. 532 (1974); *Pueblo* v. *Costoso Caballero*, 100 D.P.R. 147 (1971).

*Por los fundamentos expuestos, se declara con lugar la moción de reconsideración del Procurador General, se deja sin efecto nuestra sentencia del 20 de junio de 1980, y en su lugar se expide el auto y se revoca la Resolución del Tribunal Superior, Sala de Guayama, fechada 10 de enero*

---

[2] "Por tanto, para propósitos de la Cuarta Enmienda, una orden de arresto fundada en causa probable [judicial] implícitamente lleva en sí autorización limitada para entrar a una vivienda en que el sospechoso vive si existe razón para creer que se encuentra allí." (Traducción nuestra.) *Payton* v. *New York*, 443 U.S. 573 (1980).

*de 1980. Se ordena la inmediata continuación de los procedimientos compatibles con lo resuelto.*

El Juez Asociado Señor Irizarry Yunqué emitió voto disidente al cual se une el Juez Presidente Señor Trías Monge.

—O—

Voto disidente emitido por el Juez Asociado Señor Irizarry Yunqué al cual se une el Juez Presidente Señor Trías Monge.

Disiento por dos fundamentos.

A mi juicio el Tribunal descarta injustificadamente la apreciación de los hechos que hiciera el Tribunal Superior, y la sustituye por su propia apreciación. Aparte de las contradicciones y omisiones en los testimonios de los agentes, a las cuales este Tribunal resta importancia, pasa por alto que fue la juez de instancia quien vio y oyó declarar a dichos testigos y, además, estuvo personalmente en el lugar de los hechos al practicar una inspección ocular. La prueba que justifique a la Policía apartarse de los preceptos constitucionales que reconocen y ordenan garantizar el derecho a la intimidad y el derecho a protección contra registros y allanamientos irrazonables no puede considerarse livianamente. Dicha prueba tiene que ser aquilatada con mucho cuidado. No me satisfacen las explicaciones que se hacen en la sentencia de este Tribunal para revocar la apreciación que de dicha prueba hizo la honorable juez en instancia.

La Regla 17 de Procedimiento Criminal y el caso *Payton* v. *New York*, 443 U.S. 573 (1980), no son, a mi juicio, autoridad para sostener un allanamiento sin orden en las circunstancias aquí presentes. La Regla 17 autoriza la entrada a la fuerza a una edificación, para efectuar un arresto una vez se ha exigido la entrada. En *Payton* se atacó la validez constitucional de una disposición similar y

se resolvió que la Enmienda IV, aplicable a los estados vía la XIV, prohíbe a la Policía penetrar a la casa de un sospechoso para hacer un arresto, si no se tiene una orden o no se obtiene el consentimiento para la entrada. Expresamente se señaló que no estaba ante la consideración del Tribunal la autoridad de la Policía para entrar a casa de un tercero a arrestar a un sospechoso. Esta decisión, en que concurrieron seis jueces del Tribunal Supremo federal limita considerablemente el alcance de nuestra Regla 17. Como puede apreciarse, las circunstancias aquí presentes distan mucho de lo preceptuado por dicha Regla.

Como final consideración, me parece arriesgado para nuestro sistema de justicia permitir que la entrada a una casa, sea una mansión o sea una modesta choza, se pueda dejar al arbitrio de la Policía a base de argumentos ingeniosos como los aquí presentes. El hecho de que el allanamiento efectuado tuviera el efecto de descubrir una gran cantidad de marihuana no puede justificar el aflojamiento de las garantías constitucionales. La invasión de un hogar y la validez de su registro no pueden dejarse a merced de los resultados.

Confirmaría la resolución recurrida.