TEXTO COMPLETO DE LA SENTENCIA
El señor Rafael Alvarado Toro, en lo sucesivo acusado o apelante, apeló ante nos de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 30 de junio de 1999, mediante lo cual se le declaró culpable por la comisión de los delitos de tentativa de violación y actos lascivos e impúdicos.
Por los fundamentos que exponemos a continuación, confirmamos la sentencia apelada.
Consideremos la situación fáctica ante nos.
*861 El 21 de mayo de 1997, Caroline Nieves Linares, en lo sucesivo la menor de edad, quien en ese momento tenía cinco años, tuvo que ser llevada al hospital debido a un sangrado vaginal. Luego de realizarse una investigación de los hechos, se presentaron varias acusaciones contra el apelante por los delitos de actos lascivos e impúdicos, violación y tentativa de violación cometidos contra la menor de edad, ademas de dos cargos de violación a la Ley de Vehículos y Tránsito.
En la vista en su fondo del caso, declararon ocho testigos por parte del Ministerio Público, cuyos testimonios resumimos a continuación.
Primero, testificó el señor José Blass Torres Ruiz, quien indicó que el día de los hechos se encontraba trabajando en la CORCO como oficial de seguridad cuando llegó el apelante al lugar en su vehículo acompañado de otro señor. El apelante, quien expedía un fuerte olor a licor, se bajó de su automóvil y le preguntó si podía conseguirle un poco de agua. Del vehículo se bajaron también una señora y dos niñas, de las cuales una, quien según él se veía "muy mal", se quejó de tener un fuerte dolor. Señaló que la madre la cargo, pero la soltó inmediatamente al notar que se había manchado con sangre. Finalmente, éstos se montaron en otro vehículo dirigiéndose hacía el hospital de Guayanilla.
El señor Torres Ruiz también indicó que en el interior del. vehículo observó "una lata de corn beef, una de galletas y un canecón de Bacardi' y que el asiento del pasajero de éste, su piso y una toalla que allí estaba, estaban manchados con sangre.
Segundo, testificó la señora Cándida Rodríguez Santiago, quien para la fecha en que ocurrieron los hechos era vecina de la menor de edad. Esta indicó que la niña Yesenia Barbosa Linares (Yesenia), hermana de la menor de edad, le había contado que le temía al acusado, pues éste "le hacia ciertas cosas en sus partes". Exposición estipulada de la prueba, pág. 3. En el contrainterrogatorio, ésta señaló que no le había contado lo sucedido a nadie; que Yesenia nunca le había dicho que el acusado le hiciese lo mismo a su hermana Caroline y que de no habérselo contado, nunca habría pensado que ello hubiese estado ocurriendo.
Tercero, declaró la señora Carmen Alvarado Vargas, hija del acusado, quien señaló que la menor de edad le había indicado que el acusado "le ponía el pipi, ahí, señalándose la vagina". Ibid, pág. 5. Luego, durante el contrainterrogatorio, sostuvo que su padre tenía otras hijas, quienes nunca se habían quejado de haber sido "tocadas" por él; que cuando visitó a su padre en su residencia, nunca observó que a la menor de edad la hubiesen maltratado o se encontrase con la ropa estirada; que no esperaba ese tipo de comportamiento de su padre y que nunca contó lo que le había dicho la menor de edad, a pesar de que su padre no la había amenazado.
Cuarto, testificó la menor de edad, quien indicó que el día de los hechos el acusado la había colocado encima de una mesa donde le había tocado la vagina y la había penetrado con su pene. Esta también afirmó que no se había caído, ni se había dado con un bloque.
Quinto, el Dr. Rolando Ramírez, ginecólogo, expresó que examinó a la menor de edad el día de los hechos; que en ese momento no encontró "sangrado activo, ni evidencia de ningún tipo de trauma en el área genital, y que registró el ano y que el mismo estaba intacto". Exposición estipulada de la prueba, pag. 12. En fin, señalo que no podía a simple vista determinar de dónde provenía el sangrado. Además, indicó que la familia de la menor de edad le informó que ésta se había caído en el patio.
Sexto, el Dr. Ronald A. Rodríguez Ramos, quien al momento de testificar se encontraba terminando una especialidad en obstetricia y ginecología, afirmó que había atendido más de ciento veinte casos de abuso sexual y había servido como testigo en alguno de éstos en el tribunal; que examinó a la menor de edad el 23 de mayo; es decir, dos días después de que ésta fuera al hospital sangrando, y que al hacerle un examen vaginal a ella *862 percibió que "presentaba una genitalia adecuada para la edad y el sexo y un olor fuerte", ibid. Además, indieó que "el himen de la niña presentaba unas laceraciones a las tres y nueve, según las manecillas del reloj". Ibid. Además sostuvo que al momento de examinarla no encontró ningún cuerpo extraño en la vagiña y tío. había sangrado, aunque su ropa tenía un manchado rojizo; que "el cuadro que tuvo ante su cdñsidéfacíóñ era compatible con que por la vagina de la niña hubiese penetrado un pene. Que la niña no le dio hingüñá versión." Ibid., pág. 13. Este también examinó a Yesenia, quien negó haber sido tocada por ninguna pétsoM eii sus partes íntimas, y no le encontró laceraciones en el himen, ni prueba de que ésta hubiese sido abusada sexualmente.
En el contrainterrogatorio indicó que el examen vaginal que le fuera hecho a la menor de edad, no demostró la presencia de pelo púbico; que las laceraciones que presentaba el himen de ésta, también eran compatibles con. 1. Que la niña se hubiese caído en el patio y se hubiese dado con un objeto; 2. que la niña se hubiese rascado y se hubiese causado esas laceraciones, y 3. Que otra persona con una peinilla le hubiese causado esas laceraciones". Ibid, pág. 14. Finalmente, a preguntas del abogado de la defensa, afirmó que era difícil, aunque no imposible, que un adulto penetrase la vagina de la niña.
Séptimo, el Ministerio Público presentó el testimonio de la niña Yesenia de seis años de edad. Esta testificó que todas las noches, el acusado le daba a su madre unos somníferos, los cuales éste trituraba y echaba en la comida, en el agua o en el jugo, y que luego, mientras su madre dormía "le quitaba la ropa a ella, empezaba a tocarla, la besaba y le poma el huevo en la tota y la chupaba", ibid, pag. 16, que el acusado le hacía lo mismo a su hermana, menor de edad; que el día de los hechos estaba jugando baloncesto con sus hermanos cuando el acusado la llamó, y que la llevó a su cuarto y comenzó a tocarla pasándole el pene por su vagina, practicándole el sexo oral (cunnilingus) y besándola, y que luego llamó a su hermana, la menor de edad, a quien le hizo lo mismo. Sin embargo, en ese momento, su madre, quien estaba durmiendo, se levantó y éste "salió como loco", ibid, pag. 16, que entonces su madre baño a los nenes y a la menor de edad y luego le pidió que la peinara, y que en ese momento fue cuando la menor de edad notó que estaba sangrando. Yesenia, además, indicó que en la cama donde ocurrieron los hechos, ni en la sábana, había sangre. También afirmó-que no le había dicho nada a nadie, pues el acusado la había amenazado con matarla. Luego, a preguntas de la defensa, aceptó que la había amenazado por primera vez en el juicio.
Por último declaró la agente Lespier, quien investigó el caso. Eí día de los hechos, ésta entrevistó a Yesenia, quien le indicó que la menor de edad se había caído y se había dado; que a veces ésta afirmaba que había sido con un tubo y otras con una varilla; que la madre de la menor le dio la ropa de la niña, la cual estaba manchada con sangre, que a esta ropa le hicieron los examenes serologicos pertinentes, los cuales reflejaron ausencia de semen; que también entrevistó al médico que examinó a Yesenia, a quien le solicitó que trasladaran a la niña del hospital para que le hicieran una evaluación médica más completa, pues, según éste afirmaba, en el hospital de Yauco no tenían el equipo adecuado para examinarla. Afirmó que el examen que le hicieron a la menor de edad reflejó la posibilidad de que esta hubiese sido abusada sexualmente, mientras' que el que le hicieron a Yesenia resultó negativo.
Además, la agente Lespier declaró que el 8 de julio de 1997 entrevistó a la menor de edad, quien le indicó que la habían llevado al hospital, pues el acusado le había puesto el pene en la vagina y le había practicado sexo oral, que posteriormente entrevisto nuevamente a Yesenia, quien le relató cómo el acusado sostenía relaciones sexuales con su madre, con ella y con su hermana, (la menor de edad) lo cual observaba desde un hueco que había en la pared de la cocina. En cuanto al día en que ocurrieron los hechos imputados al acusado, testificó que Yesenia le dijo lo siguiente:

“...Entonces... yo le pregunté a ella sobre el día que la niña Caroline la llevaron al hospital ¿Qué fue lo que sucedió? Si es que ella lo sabía, ella dice que ella estaba jugando en el que todos los hermanitos y que él Sr. Rafael Toro la llamó, que ella le preguntó para qué y él dice que te dije que-suba y entonces ella sube allí entonces ella dice que le quitó la ropa que le colocó el huevo como dice ella la tota qué le lambió la tota qué 
*863
ella trataba de salirse y que él la aguantaba que también le dijo que "a ti no te gustan que te toquen y entonces la deja y se va. La nena se va para afuera para la sala y que entonces el llama a Caroline dice ella que cuando llama a Caroline ella se va al balcón un sofa (sic) que hay creo que había un sofa (sic) en el balcón. Se va al balcón y entonces está allá con Caroline, pero que pasa, que ella entonces vuelve y se viene aca a la cocina y que observa por un roto que hay en la cocina cuando el Sr. Rafael Toro le quita la ropa a la nena y empieza a introducirle el dedo y también le chupa ella dice y observa como si le hubiera echado saliba (sic) escupido en la tota. Que luego, de eso ve que la nena se pone colora y ella dice que lo escucha cuando el dice: tu te pareces a tu hermana que no le gusta que la toquen. Entonces deja la niña y ambas se van a la sala y se sientan en la sala posterior a eso ellas observan que la mama se levanta y entonces la nena dice que la mama se levanta como loquita...”.

La señora Lespier también indicó que visitó la residencia del acusado y pudo observar la hendidura en la pared de madera que había mencionado Yesenia, desde donde se observaba la habitación adyacente. Sin embargo, ésta no pudo encontrar dicha hendidura en las fotos de la casa que presentó la defensa ante el Foro de instancia.
Luego de escuchar la prueba presentada, el Tribunal apelado declaró culpable al apelante por la comisión de los delitos de tentativa de violación y actos lascivos, sentenciándolo a cumplir ocho años de prisión de manera concurrente. Inconforme, el apelante apela y señala que el Tribunal de Primera Instancia erró al:

“...concluir que la prueba presentada por el Ministerio Público en el presente caso era una suficiente y satisfactoria, capaz de rebasar la presunción de inocencia que cobijaba al acusado durante todo el procedimiento y, en su consecuencia, probar la culpabilidad de este mas alia de duda razonable y fundada.

Presentada la exposición narrativa estipulada de la prueba, el Procurador General presentó su informe mediante el cual solicitó que confirmemos la Sentencia apelada.
Consideremos el derecho aplicable.
II
Es precepto constitucional que a todo acusado le cobija una presunción de inocencia y que el Ministerio Fiscal debe probar más allá de duda razonable que todos los elementos del delito imputado estuvieron presentes y que la persona acusada los cometió. Artículo II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico y Regla 110 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II. La prueba a presentarse no sólo tiene que ser suficiente en derecho para probar los elementos del delito, sino ser satisfactoria, de manera que no produzca duda razonable en la conciencia del juzgador. A esos efectos, nuestro Tribunal Supremo, al expresarse sobre la duda razonable, reiteró en Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985), que:
“[ejsto no quiere decir que toda duda posible tenga que ser destruida y que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia establezca aquella certeza moral que convence, dirige la inteligencia y satisface la razón. Duda razonable es una duda, fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso. No debe ser, pues, una duda especulativa o imaginaria”. Instrucciones al Jurado para el Tribunal Superior, op. cit., pág. 42; Pueblo v. Gagot Mangual, 96 D.P.R. 625, 627 (1968).
El apelante alega, en particular, que el Foro de instancia erró al apreciar la prueba presentada, pues no quedó claro de dónde salió toda la sangre que Caroline perdió el día de los hechos; que si el apelante hubiese penetrado a la menor de edad con el dedo o el pene, no es posible que esta tardara tanto en sangrar, que no quedó probado más allá de duda razonable que las laceraciones que ella tema en el himen fueran a consecuencia de abuso sexual por parte del acusado; que la ropa de la menor de edad, luego de practicársele un examen serológico, no reflejó la presencia de semen; que a pesar de lo narrado por Yesenia, no había evidencia de que ésta también hubiese sido objeto de abuso sexual; que en un principio, los trabajadores sociales que investigaron *864 el caso y la agente de la policía, Sra. Jeannette Torres Vélez, calificaron el incidente como uno desgraciado; que el testimonio de la menor de edad es insuficiente pata establecer la culpabilidad del apelante más allá de duda razonable; que la señora Carmen Alvarado Vargas contradijo lo testificado por la menor de edad; que la prueba ofrecida no contiene elementos de violencia o intimidación capaces de llevar a tas niñas a cometer los actos que se han mencionado"-, que no se les tomó declaración jurada alguna a las niñas hasta el día 8 de julio de 1997; que esperaron casi dos meses para arrestar al apelante; que le parece increíble que la agente Lespier haya encontrado un testigo de corroboración para probar lo testificado por la menor de edad y lo dicho por Yesenia; que resulta sospechoso, el hecho de que la policía considerase que el apelante había abusado de la menor de edad desde antes de que las niñas, la menor de edad y Yesenia, hubiesen testificado al respecto y que éstas habían sido entrevistadas por especialistas y en ningún momento indicaron haber sido víctimas de abuso sexual.
No le asiste la razón. Veamos.
El apelante, en el caso de marras, fue declarado culpable de los delitos de actos lascivos y violación. Por lo tanto, consideraremos sus elementos.
El Artículo 105 del Código Penal, 33 L.P.R.A. see. 4067, establece que:

“Toda persona que sin intentar consumar acceso camal cometiere cualquier acto impúdico o lascivo con otra, será sancionada con pena de reclusión, según más adelante se dispone, si concurrieran cualesquiera de las siguientes modalidades:

a) Si la víctima fuere menor de catorce (14) años.... ”

El acto lascivo o impúdico ha sido definido como "aquél que tiende a despertar, excitar o satisfacer la impudicia, pasión o deseos sexuales." D. Nevares-Muñiz, Código Penal de Puerto Rico, Hato Rey, Instituto para el Desarrollo del Derecho, Inc., 1997, pág. 172. Los elementos de este delito consisten en "realizar-un acto impúdico o lascivo con otra persona sin intención de tener acceso camal, en cualquiera de las modalidades que especifica el artículo . D. Nevares-Muñiz, ibid. Si el delito se lleva a cabo en una persona menor de catorce años, no se tomará en consideración si el menor conocía o no que se trataba de un acto impúdico o si prestó o no consentimiento para el mismo.
De otro lado, el Artículo 99 del Código Penal, 33 L.P.R.A. see. 4061, define el delito de violación de la siguiente manera:

“Se impondrá pena de reclusión, según se dispone más adelante, a toda persona que tuviere acceso camal con una mujer que no fuere la propia, en cualquiera de las siguientes modalidades:

a) Si la mujer fuera menor de 14 años. ”

Los elementos del delito de violación consisten en "tener relación sexual con una mujer que no es su esposa, sin su consentimiento o mediante un consentimiento viciado...". D. Nevares-Muñiz, ibid., pág. 160. Si el acto se lleva a cabo con una mujer menor de catorce años, violación técnica, tampoco será necesario probar si esta consistió al acto sexual, por lo que no habrá que probar la utilización de violencia. D. Nevares-Muñiz, ibid., pág. 161. Se le imputará el delito de tentativa de violación cuando la persona lleva actos u omisiones dirigidas a cometer el delito de violación y éste no se consuma por razones ajenas a su voluntad. Artículo 26 del Código Penal, 33 L.P.R.A. see. 3121.
La prueba, contrario a lo alegado por el apelante, fue más que suficiente para establecer la conexión de éste con el acto delictivo, más allá de toda duda razonable. A esos efectos, es menester señalar que para probar los elementos de los delitos de tentativa de violación y actos lascivos, no había que demostrar de dónde salía la *865 sangre que la menor de edad perdió el día de los hechos; tampoco había que demostrar que esta hubiese sido penetrada con un dedo o con el pene del acusado, ni si las laceraciones de su himen provenían verdaderamente de una penetración por parte del apelante. Mucho menos había que demostrar la presencia de semen en la ropa de la menor de edad. De hecho, el apelante fue declarado culpable de actos lascivos y tentativa de violación, y no de violación. Tampoco era necesario probar que los actos fueron llevados a cabo con violencia o intimidación, pues cuando el delito de actos lascivos y el de tentativa de violación se lleva a cabo en la persona de una menor de catorce años, ello basta para que el mismo se configure sin que sea necesario probar la utilización de fuerza o que la menor accedió a consecuencia de la intimidación del acusado. Menos aún, era imprescindible para probar los elementos del delito más allá de duda razonable, el método que la agente Lespier utilizó para investigar el caso.
El hecho de que las niñas hubiesen variado sus versiones, es sólo un elemento más que podría afectar la credibilidad de éstas, pero no conlleva la absolución del acusado. Debemos tener en consideración que muchas víctimas de abuso sexual nunca relatan lo que les sucedió o tardan mucho en hacerlo. Ademas, el hecho que se haya presentado prueba contradictoria o que uno de los testigos de cargo haya mentido al declarar, no implica que la misma deba ser descartada. A esos efectos, nuestro Tribunal Supremo ha reiterado que una contradicción en el testimonio de un testigo relacionada con hechos que no son esenciales o fundamentales para probar los hechos delictivos, no obligan al juzgador a descartar el resto del testimonio. Pueblo v. Pacheco Betancourt, 92 D.P.R. 359 (1974); Pueblo v. Feliciano Hernández, 113 D.P.R. 371 (1982). En Pueblo v. Espinet, 112 D.P.R. 531, 536 (1982), se dice que:
“...es imprescindible armonizar toda la prueba y analizarla en conjunto a los fines de arribar al peso que a la misma debe concedérsele. No debemos resolver un caso por detalles que no van a la medula de la controversia”. (Citas omitidas).
Finalmente, el apelante alegó que el Foro de instancia había absuelto al acusado de los cargos imputados en su contra que estaban relacionados con Yesenia, lo que implicaba que no creyó su testimonio y que sólo restaba lo declarado por la menor de edad. En consecuencia, concluyó que esta declaración no era suficiente para demostrar su culpabilidad más allá de toda duda razonable.
Debemos recordar que el juzgador de los hechos toma en consideración la totalidad de la prueba presentada ante sí y sólo declara culpable a un acusado cuando queda convencido más allá de toda duda razonable de que éste cometió el delito imputado. Véase: Pueblo v. Rodríguez Román, 128 D.P.R. 121 (1991); Pueblo v. Cruz Negrón, 104 D.P.R. 881 (1976); Pueblo v. López Rivera, 102 D.P.R. 359 (1974); García Rivera v. Tribunal Superior, 86 D.P.R. 823 (1962). En el caso de marras, el Foro de instancia tuvo ante sí los testimonios de ocho testigos, los cuales de ser creídos, contenían prueba suficiente para sostener la comisión de los delitos de actos lascivos y tentativa de violación más allá de toda duda razonable. El hecho de que el juzgador descarte parte de un testimonio, no impide que pueda darle credibilidad al resto. Pueblo v. Rodríguez Román, supra.
Es norma general en derecho que los tribunales de instancia están en mejor posición que los tribunales apelativos para aquilatar la prueba testifical que se aporta en un juicio. Nuestro Tribunal Supremo en Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986), ratificó:

“...la norma es a los efectos de que no intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia excepto en casos en que un análisis integral de dicha prueba cause en nuestro animo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante -de manera principal-, señalar y demostrar la base para ello. Lo contrario, esto es, la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia, significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción. ”

*866 Finalmente, como se dijo en Pueblo v. Dávila, 97 J.T.S. 68, pág. 1008, sólo:

“...en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no intervendremos a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hechas en instancia por el juzgador de los hechos. La razón de esta norma es obvia, pues es el juzgador de los hechos quien observa el comportamiento de los testigos al momento de testificar, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad. ”

Eii resumen, con la pmeba presentada y creída, la cual fue más que suficiente para encontrar al acusado culpable más allá de toda duda razonable, y en ausencia de error, pasión, prejuicio o parcialidad del Tribunal de Primera Instancia, es forzoso concluir que el error imputado no fue cometido.
Por los fundamentos antes expresados, confirmamos las sentencias apeladas.
Lo acordó el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General