# 96 DTA 125

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL II DE BAYAMON**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

ROBERT SANTIAGO LOPEZ
Peticionario

Núm. KLCE-96-00214

RECEIVED

NOV 2 7 1996

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 27 de septiembre de 1996

Panel integrado por su Presidenta, Juez Fiol Matta,
y los Jueces Gierbolini y Rodríguez de Oronoz

Fiol Matta, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El acusado-peticionario nos solicita la revisión de una resolución emitida el 15 de febrero de 1996 por el Tribunal de Primera Instancia, Sala de Bayamón. Esta declaró improcedente la moción que dicha parte presentó solicitando la supresión de la evidencia que el Ministerio Público utilizaría para sustentar el cargo que se le imputaba.

El 25 de marzo de 1996, ordenamos la paralización de los procedimientos en el foro de instancia, solicitada por el peticionario en su Moción en Auxilio de Jurisdicción. Asimismo, le ordenamos al Procurador General exponer su posición en torno a la expedición del recurso. El 24 de abril de 1996, el recurrido sometió su informe-- en cumplimiento de nuestra orden. Analizados los planteamientos de las partes y el derecho aplicable, confirmamos la resolución recurrida.

II

Los hechos que dieron lugar al arresto del recurrido y a su eventual acusación por infringir el artículo 8 de la Ley de Armas, según expuestos en la resolución enmendada de 15 de febrero de 1996, en la petición de *certiorari* y en el informe del Procurador General, surgen del testimonio del policía uniformado William Cruz Cortés, único testigo del Ministerio Público. Este declaró en la vista de supresión de evidencia que el 6 de noviembre de 1995, a eso de las 10:00 p.m., patrullaba por la Calle Las Flores del municipio de Vega Baja, en un vehículo oficial y rotulado de la Policía, junto a su compañero, el policía Crespo. Ambos estaban uniformados y él conducía el vehículo. En dicha calle observaron un automóvil Nissan Sentra, rojo, estacionado a la parte derecha de la patrulla, con tres personas en su interior. Relató que cuando se acercaron y aparearon la patrulla al Nissan, la persona que lo conducía encendió el motor y retrocedió. En ese momento, el policía Cruz Cortés se percató de que el vehículo no tenía el sello de inspección o que el mismo estaba vencido. Por ello, ordenó al conductor, quien resultó ser el acusado-peticionario, detener el vehículo. Cuando éste así lo hizo, Cruz Cortés le solicitó su licencia de conducir y la licencia del vehículo. El policía atestó que el señor Santiago López le entregó su licencia de conductor del vehículo. Luego, según hizo constar el juez de instancia en la resolución recurrida:

*"El policía Cruz Cortés se acerc[ó] con una linterna [de mano] al lado derecho del parabrisas delantero y alumbr[ó] para corroborar el color del sello de inspección y su vigencia, el cual estaba vencido. Al alumbrar pudo observar las cachas de un arma de fuego que sobresalían de debajo del asiento del pasajero. Orden[ó] a los tres individuos bajarse del auto y [les] pregunt[ó] si alguien ten [ía] licencia para portar [dicha] arma de fuego. Acto seguido, dos de los individuos sal[ieron] corriendo y no fueron arrestados."*

El peticionario, quien se quedó sentado en la acera, fue arrestado y denunciado por violaciones a los artículos 6 y 8 de la Ley de Armas, 25 L.P.R.A. secs. 416 y 418, (tener, poseer y portar un arma de fuego sin licencia) y a la sección 5-1307 (b) de la Ley de Vehículos y Tránsito, Ley Núm. 141 de 12 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 1197(b), que prohibe conducir un vehículo por la vía pública con el sello de inspección vencido.

Luego de una determinación judicial de causa para su arresto, de una vista preliminar en la que sólo se determinó causa probable para acusar por infracción al artículo 8 de la Ley de Armas y del Acto de Lectura de la Acusación, el acusado presentó, el 11 de enero de 1996, una moción de supresión de evidencia en la que alegó que la evidencia ocupada fue producto de una intervención y registro ilegal realizado sin orden judicial, en contravención a los derechos garantizados por la Sec. 10, Art. II, de la Constitución del Estado Libre Asociado de Puerto Rico. ■

El 14 de febrero de 1996 se celebró una vista en la que, según hemos indicado, el Ministerio Público presentó como testigo al policía Cruz Cortés para justificar el registro sin orden impugnado. El juez de instancia le dio entera credibilidad al testimonio del policía Cruz Cortés y declaró válido el

registro sin orden. Según expresó en su resolución, el testimonio de dicho testigo fue *"uno cándido, claro, sin contradicciones"* que *"no pudo ser controvertido por la defensa en su contrainterrogatorio"*. Resolución de 15 de febrero de 1996, página 3. A base del mismo, el tribunal concluyó que el registro fue uno legal porque se dieron las circunstancias especiales que permiten a los oficiales del orden público efectúar un registro sin orden para ocupar prueba a *"plena vista"*. Estas circunstancias, según expuso en su resolución, fueron las siguientes:

*"El arma de fuego fue descubierta por estar a plena vista y no por razón de un registro.*

*El policía que observó, tenía derecho previo, a estar en la posición desde la cual podía verse tal prueba, (en pie, fuera del auto y al lado derecho del parabrisas, corroborando el sello de inspección el cual mostraba un color vencido).*

*El objeto fue descubierto inadvertidamente, al alumbrar hacia el marbete, observa en el piso del lado del pasajero las cachas del arma que sobresalen de debajo del asiento del pasajero.*

*La naturaleza delictiva del objeto surgía de la simple observación, (las cachas de un arma de fuego). Concluyó que el registro fue válido bajo la doctrina de prueba a "plena vista".* Resolución I de 15 de febrero de 1996, páginas 2-3.

En su recurso de *certiorari*, el peticionario señala que el registro sin orden fue irrazonable porque los policías que intervinieron no tuvieron motivos fundados para realizar dicha gestión investigativa ya que la detención inicial del auto no estuvo justificada. Reclama, además, que el registro tampoco se puede validar por razones de seguridad ya que la prueba demostró que las personas que estaban en el vehículo ya habían salido fuera y no estaban al alcance del mismo.

En su informe, el Procurador General sostiene que la intervención de la policía con el apelante fue justificada, al amparo de las secciones 5-1120 (c), 5-1302 (a) y 2-101 (a) de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, 9 L.P.R.A. secs. 1152 (c), 1192 (a) y 401 (a) respectivamente. La primera autoriza la Policía a detener o inspeccionar cualquier vehículo cuando a su juicio el mismo se estuviere usando en violación a dicho estatuto. La segunda requiere que todos los vehículos de motor que transiten por las vías públicas sean sometidos a inspecciones mecánicas periódicas cuando y conforme el Secretario de Transportación y Obras Públicas lo disponga por reglamento. Por su parte, la sección 2-101 (a) prohibe el que un vehículo de motor transite por las vías públicas sin la licencia expedida por el Secretario de Transportación y Obras Públicas.

## II

La protección constitucional contra registros y allanamientos irrazonables tiene base tanto en la Constitución de los Estados Unidos como en la del Estado Libre Asociado de Puerto Rico. Sin embargo, la nuestra contiene unas garantías más amplias, goza de una vitalidad independiente y su interpretación no ha sido, ni tiene necesariamente que ser, históricamente paralela en todo sentido con la de la Cuarta Enmienda de la Constitución Federal. Véase *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988); *Pueblo v. Lebrón,* 108 D.P.R. 324 (1979) y *Pueblo v. Dolce,* 105 D.P.R. 422 (1975). ■ La Sección 10 de la Carta de Derechos de la Constitución del E.L.A está orientada a proteger a la persona, sus pertenencias y la intimidad del hogar frente a cualquier actuación irrazonable por parte del Estado. *Pueblo en Interés del Menor N.R.O.* ___ D.P.R. ___ (1994), **94 J.T.S. 118.** Los valores centrales que interesa proteger son la intimidad del ser humano y su dignidad innata. *Pueblo v. Muñoz Santiago,* ___ D.P.R. ___ (1992), **92 J.T.S. 149**, pág. 10084. Además, la garantía contra registros y allanamientos irrazonables protege los documentos y pertenencias del ciudadano e interpone la figura del juez entre los funcionarios del Estado y la ciudadanía, para ofrecer mayor garantía de razonabilidad en la intrusión. Véase *Pueblo v. Conde Pratts,* 115 D.P.R. 307, 318 (1984) (Opinión concurrente del Juez Trías Monge) y *Pueblo v. Dolce, supra*. Debemos destacar, pues, que *"[a]l igual que en el caso del arresto, la razonabilidad de la intervención será la piedra angular de su validez constitucional"*. ■ Por eso, un registro no traspasa el límite constitucional a menos que infrinja la expectativa de intimidad más allá de lo que la sociedad está dispuesta a aceptar como razonable para proteger otros valores e intereses. Véase *United States v. Padín,* 787 F.2d 1071, 1075, 479 U.S. 823, 1075 Ct. 983, 983 L.Ed. 2d 45 (1986). *Pueblo en Interés del Menor N.R.O., supra*, página 146.

La protección de la garantía constitucional contra registros y allanamientos irrazonables ha sido extendida a los vehículos, por lo que no puede efectúarse un registro sin orden en un automóvil sobre el cual el dueño o conductor retenga una expectativa legítima de intimidad. *Pueblo v. Castro Rosario*, ___ D.P.R. ___ (1990), **90 J.T.S. 7**; *Pueblo v. Sosa Díaz,* 90 D.P.R. 622 (1964). La regla general es que ante una violación de tránsito, los agentes pueden detener el vehículo ·y requerir al conductor presentar el registro del vehículo y su licencia de conducir, así como permitir acceso al número de identificación del vehículo, pero no pueden detenerse vehículos al azar para inspeccionar la documentación correspondiente. Chiesa Aponte, Ernesto L., Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. 1, Sec. 6.25, páginas 490-491.

Como corolario fundamental a la protección que debe brindarse a la expectativa de intimidad, la jurisprudencia ha creado una presunción de invalidez cuando los registros y allanamientos se llevan a cabo sin orden judicial previa. Por eso, ordena que sea inadmisible, en un proceso criminal contra el sujeto del registro y allanamiento, toda evidencia ocupada sin orden judicial, a menos que se consienta al registro, directa o indirectamente, o que circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta. Véase *Pueblo v. Ríos Colón*, ___ D.P.R. ___ (1991), **91 J.T.S. 66**, página 8824 y *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197 (1984). Resultado de lo anterior es la obligación del Ministerio Público de rebatir dicha presunción mediante la presentación de prueba sobre la existencia de circunstancias especiales o apremiantes que requirieron la intervención sin orden judicial. *Pueblo v. Lebrón, supra*; *Pueblo v. Falú Martínez,* 116 D.P.R. 828 (1986). Una de dichas excepciones, que son limitadas y específicas, ■ es la del acto ilegal a plena vista. ■

Para que sea razonable y, como tal, válido un registro sin orden judicial previa, conforme a la norma de excepción aplicable al acto ilegal a plena vista, el Ministerio Público debe probar que: (1) el artículo fue descubierto por estar a plena vista o percepción del agente, y no en el curso o por razón de un registro; (2) el agente que observó la prueba tenía derecho previo a estar en la posición donde podía verse tal prueba; (3) el objeto fue descubierto inadvertidamente y (4) la naturaleza delictiva del objeto surgía de la simple observación. *Pueblo en interés del menor N.R.O.*, ___ D.P.R. ___ (1994), **94 J.T.S. 118;** *Pueblo v. Muñoz Santiago,* ___ D.P.R. ___ (1992), **92 J.T.S. 149;** *Pueblo v. Dolce,* 105 D.P.R. 422 (1976). Según el Tribunal Supremo, los casos en que se reclama la validez de un registro sin orden, por ser consecuencia de un acto ilegal a plena vista o por tratarse de evidencia abandonada o lanzada al suelo, deben, en ausencia de otras consideraciones, inducir la sospecha de un posible testimonio estereotipado. *Pueblo v. Rivera Rodríguez,* 123 D.P.R. 467 (1989); *Pueblo v. González del Valle,* 102 D.P.R. 374, 378 (1974). No obstante, el simple hecho de que la evidencia esté a simple vista o haya sido abandonada no es suficiente para concluir que se está frente a un testimonio estereotipado. *Pueblo v. Espinet Pagán,* 112 D.P.R. 531, 537 (1982). Para determinar si efectivamente hubo causa probable o motivo fundado para llevar a cabo un registro, debe evaluarse la conducta previa a este registro. *Pueblo v. Ortiz Alvarado*, ___ D.P.R. ___ (1994), **94 J.T.S. 6**. Según explica la profesora Resumil, refiriéndose a la decisión del Tribunal Supremo federal, en *Horton v. California,* 476 U.S. 128, 110, L.Ed. 2d 112, 110 S.Ct. 2301 (1990):

*"... [c]omo cuestión de derecho, el requisito indispensable [para la aplicación de la doctrina del acto ilegal a plena vista] radica en el derecho del agente a encontrarse en el lugar desde donde observa el objeto. Una vez queda así constituido, la observación a plena vista no invade la intimidad. Para que pueda constatarse una violación al derecho a la intimidad de acuerdo con esta doctrina, tal intervención debe ocurrir con anterioridad a que el objeto a plena vista sea observado...."* Resumil de Sanfilippo, Olga, *Práctica Jurídica de Puerto Rico,* Derecho Procesal Penal, Tomo I, Suplemento Acumulativo 1992, página 65.

### III
A la luz de esta doctrina y de los hechos ya expuestos evaluemos si debió suprimirse el arma incautada por los policías Cruz Cortés y Crespo. Ya hemos señalado que el peticionario cuestiona la legalidad de la intervención inicial de la Policía alegando que carecía de motivos fundados. De ser así, el policía Cruz Cortés no estaba autorizado a estar en el lugar desde el cual, según atestó, pudo observar las cachas del revólver ocupado y no podría validarse el registro del automóvil, sin orden judicial, bajo la excepción del acto ilegal a plena vista.

El peticionario aduce que los agentes no tenían derecho a intervenir con el vehículo por razón del sello de inspección porque según admitió el policía Cruz Cortés, a la fecha de los hechos, 6 de noviembre de 1995, había entrado en vigencia una nueva ley ▮ que eliminó el requisito de exhibir los sellos de inspección en el parabrisas de los vehículos y convirtió la inspección del vehículo en un pre-requisito para la renovación de la licencia *("el marbete")*. Según el peticionario, Cruz Cortés admitió también que *"para la fecha los hechos podría haber miles de vehículos debidamente inspeccionados sin tener sello de inspección"* o con el sello de inspección vencido en el cristal delantero y que por ello, la única forma de saber si un vehículo estaba o no debidamente inspeccionado era deteniéndolo y pidiendo al conductor la registración del vehículo. Señala que Cruz Cortés declaró que cuando observó por primera vez el sello de inspección del vehículo que conducía el peticionario también observó que el marbete se encontraba al día. El peticionario también cuestiona la credibilidad que le adjudicó el juez de instancia al testimonio de dicho agente. A esos efectos apunta:

*"Resulta increíble del [sic] testimonio del policía que necesitó una linterna para verificar a un pie de distancia lo que previamente había observado desde la patrulla y mientras el vehículo Sentra estaba a su lado derecho. Además de que sin tener que alumbrar al interior del vehículo en horas de la noche vio las cachas del arma debajo del asiento. Tomando en cuenta que las cachas del arma eran color oscuro y los interiores del auto también."* Petición de *certiorari*, página 9.

El peticionario alega, además, que los agentes no tuvieron motivo fundado alguno para creer que se había cometido una infracción de tránsito porque no era posible para los policías que ocupaban el auto patrulla, observar a esas horas de la noche (10:00 p.m.) desde su auto patrulla la deficiencia en el sello de inspección del vehículo que conducía el peticionario. Asegura que el policía Cruz Cortés declaró que *"al pararse al lado del vehículo Sentra observó que el sello de inspección era color amarillo pero que no sabía si estaba vencido [y que] [p]or esa razón procedieron a detener al conductor y pedirle los documentos correspondientes"*. Petición de *Certiorari*, página 9. Esto, a su entender, indica que actuaron a base de meras sospechas.

Por ello, el peticionario reclama, citando como fuente a *Pueblo v. Lastra Sáez,* 93 D.P.R. 876 (1967), que las meras sospechas no son suficientes para intervenir con un ciudadano y que en nuestra jurisdicción no se permiten las detenciones para investigación. *Id.,* página 11.

Antes que nada, procede aclarar que se equivoca el peticionario en cuanto a las expresiones del Tribunal en *Pueblo v. Lastra, supra.* Allí se sostuvo que *"[l]a mera sospecha no es la causa probable o motivo fundado que podía justificar [el] arresto [de una persona]"*. *Id,.* página 885, énfasis nuestro. Por otra parte, en *Pueblo v. Malavé González,* 120 D.P.R. 470 (1988), el Tribunal sostuvo que 'aunque una mera infracción de tránsito no justificaba de por sí un registro sin orden judicial, sí validaba la detención inicial del vehículo. Allí se explicó que la Sec. 5-1119 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra,* 9 L.P.R.A. sec. 1152 (c), autoriza a la Policía a detener cualquier vehículo cuando, a su juicio, se estuviere usando en violación de dicho estatuto. El Tribunal, señaló, no obstante, que a menos que existan circunstancias especiales, resultaría irrazonable el registro del interior de un automóvil que la Policía ha detenido por una violación menor de tránsito, sin orden judicial. De igual forma, se ha validado la intervención inicial con un vehículo cuando existe en la mente de los oficiales del orden público una sospecha razonable de que el conductor no tiene licencia o de que el vehículo no está registrado o que tanto el vehículo como su ocupante están sujetos a arresto por violación de alguna ley. *Delaware v. Prouse,* 440 U.S. 648, 673 (1979). ▮

Según se alega, la detención inicial del vehículo en el caso de autos se debió a que los agentes observaron que el sello de inspección del vehículo estaba vencido. En tal caso, los motivos fundados alegados por el Ministerio Público no estaban basados en sospechas, sino en hechos. ▮

Por su parte, el Procurador General arguye que la intervención de la policía con el apelante fue justificada, aun habiéndose enmendado la Ley de Vehículos y Tránsito para requerir la certificación de inspección del vehículo previo a la renovación de su licencia. Señala que es así porque la renovación de las licencias de los vehículos se hace de forma escalonada y a la fecha de los hechos todavía se exigía mostrar el sello de inspección en el parabrisas de aquellos vehículos a los cuales no les hubiera llegado la fecha de renovación. Indica que si el peticionario hubiese mostrado la licencia

del vehículo de motor cuando así se le requirió, *"el agente no hubiese estado obligado a corroborar la información que surge del sello de inspección o del marbete para verificar fechas y, entre otras cosas, la titularidad legal del referido vehículo".* Pág. 7, Informe del Procurador General.

Concurrimos con el Procurador General en que, a la fecha de los hechos, transitar por las vías públicas sin que el sello de inspección estuviese fijado en el parabrisas del auto todavía constituía, en el caso de muchos vehículos, una violación a la Ley de Tránsito. Por ello, al momento de los hechos, el observar un sello de inspección vencido en el parabrisas de un auto era suficiente para validar la detención inicial del vehículo por los agentes del orden público. El que también se haya observado que el marbete estaba al día no convierte la detención inicial en una ilegal, puesto que observar una deficiencia en el sello de inspección era suficiente para llevar a cabo una intervención rutinaria, por infracción a la Ley de Vehículos y Tránsito de Puerto Rico. Precisamente, en este caso, los agentes corroboraron posteriormente que el vehículo que conducía el peticionario tenía el sello de inspección vencido aunque el marbete estaba al día y, por ello, le formularon una denuncia por infracción a la sección 5-1307 (b) de la Ley de Vehículos Tránsito, *supra*, que según la sección 5-1303 de dicho estatuto, 9 L.P.R.A. sec. 1193, tiene el mismo efecto y consecuencias legales que transitar en un vehículo de motor sin la correspondiente licencia.

Validada la intervención inicial por existir motivos fundados para entender que se estaba infringiendo la ley, también fue legal la intervención posterior requiriéndole al peticionario que mostrara su licencia para conducir y la licencia del auto. De acuerdo con la Ley de Vehículos y Tránsito, el conductor de un vehículo tiene que transportar ambos documentos en todo momento, pero el peticionario no pudo entregar la licencia del vehículo. Fue entonces que, según atestó el policía Cruz Cortés y creyó el tribunal de instancia, se acercó al lado derecho del parabrisas y con su linterna alumbró el sello de inspección para corroborar que el mismo estuviese vencido. Al alumbrar el cristal delantero observó en el piso del automóvil las cachas del revólver cuya ocupación se impugna por irrazonable. Contrario a lo que alega el peticionario, el agente tenía derecho a estar en la posición desde cual hizo la observación por existir en su mente motivos fundados de que se estaba infringiendo la Ley de Vehículos y Tránsito.

El peticionario también cuestiona la veracidad del testimonio del policía Cruz Cortés, alegando que era imposible para los agentes observar desde su punto de referencia y de noche que el sello de inspección estaba vencido. Su alegación, sin mas, no es suficiente para derrotar la deferencia que un foro apelativo debe concederle a la apreciación de la prueba y a la adjudicación de credibilidad realizada por un juez de instancia. No hubo prueba de que el lugar estuviera totalmente oscuro y el que se alumbrara luego el sello de inspección con una linterna no necesariamente significa que el agente no se hubiera percatado anteriormente de que estaba vencido.

Como sabemos, aunque la discreción del juzgador de los hechos no es absoluta, un foro apelativo no debe intervenir con ella a menos que se demuestre un claro abuso. El peticionario no nos ha demostrado que el juzgador de los hechos cometió error al apreciar el testimonio del policía Cruz Cortés, ni que actuó movido por prejuicio, pasión o parcialidad. Tampoco se aleja la apreciación del juzgador de los hechos de la realidad fáctica ni fue la prueba de cargo inherentemente imposible o increíble. Siendo ello así, no debe este foro apelativo intervenir con dicha apreciación. *Quiñonez López v. Manzano Pozas*, ___ D.P.R. ___ (1996), **96 J.T.S. 95**; *Pueblo v. Pagán Santiago*, ___D.P.R. ___ (1992), **92 J.T.S. 56**; *Pueblo v. Maisonave Rodríguez*, ___ D.P.R. ___ (1991), **91 J.T.S. 67**; *Pueblo v. Fradera Olmo*, 122 D.P.R. 67 (1988). El análisis integral de la prueba testifical tampoco ha causado en nuestro ánimo aquella insatisfacción o intranquilidad de conciencia que estremece el sentido básico de justicia y que nos permitiría intervenir con la apreciación y adjudicación de la credibilidad de los testigos que fue realizada por el foro de instancia. *Pueblo v. Fradera Olmo, supra*.

Por los fundamentos expuestos, se confirma la resolución recurrida que declaró con lugar la moción de supresión de evidencia y se devuelve el caso a instancia para que continúen los procedimientos. En lo que respecta a la acusación por infracción a los artículos 6 y 8 de la Ley de Armas, en el juicio se deberán aplicar los criterios estatutarios y jurisprudenciales para la determinación de responsabilidad criminal, en particular la responsabilidad por posesión constructiva. Art. 35 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3172; *Pueblo en interés del menor F.S.C.*, ___ D.P.R. ___ (1991), **91 J.T.S. 68.**

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 96 DTA 125**

**1.** Esa sección establece:

*"No se violará el derecho del pueblo a la protección de sus personas, cosas, papeles, efectos, contra registros, incautaciones y allanamientos irrazonables.*

*No se interceptará la comunicación telefónica.*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*

*Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."*

**2.** Cabe mencionar que nuestro Tribunal Supremo ha determinado que cuando se examinan las decisiones del Tribunal Supremo Federal relativas a la Enmienda Cuarta se debe tener en cuenta que las mismas sólo indican el contenido mínimo de dicha garantía. *Pueblo v. Rivera Colón,* ___ D.P.R. ___ (1991), **91 J.T.S. 61**, página 8729.

**3.** Resumil de San Filippo, Olga, *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal,* Tomo I, Equity Publishing Company, 1990, página 205:

El área de protección se determinará, por tanto, a la luz de las circunstancias específicas y con base en que la disposición constitucional protege a las personas y su interés sobre sus casas, papeles, efectos o lugares y no a éstos como tales. Así lo que una persona expone al público en mayor o menor grado determinará su interés constitucional sobre el objeto y, por tanto, el alcance de la protección.

**4.** *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986); *Katz v. United States,* 389 U.S. 347, 357 (1967).

**5.** Otras excepciones son el registro incidental a un arresto, la evidencia arrojada o abandonada, la evidencia obtenida en el transcurso de una persecución, la evidencia obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado y la evidencia obtenida cuando ha mediado consentimiento para el registro. Pueblo en Interés del Menor N.R.O., *supra*, página 146.

**6.** La Ley Núm. 185 de 12 de agosto de 1995 enmendó a varias secciones de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada. Esta se promulgó con *"el fin de establecer un programa compulsorio para el diagnóstico y evaluación del sistema de control de emisiones de los vehículos de motor que sean sometidos a inspecciones periódicas...".* Exposición de Motivos, Ley Núm. 185, Leyes de Puerto Rico de 1995.

**7.** *"Accordingly, we hold that except in those situations in which there is at least articulate and reasonable suspicion that a motorist is unlicensed or that a vehicle is not registered, or that either the vehicle or its occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's licence and the registration of the automobile are unreasonable under the Fourth Amendment." Delaware v. Prouse,* página 673.

**8.** *"[L]a 'causa probable' se determina a base de criterios de probabilidad y razonabilidad, y... es doctrina firmemente establecida en nuestra jurisdicción que esa determinación tiene que basarse en hechos y no en meras sospechas. Pueblo v. Rey Marrero, 109 D.P.R. 326 (1980); Pueblo v. Lastra Sáez, 93 D.P.R. 876 (1967); Pueblo v. Fournier, 77 D.P.R. 222 (1964). Pueblo v. García Colón, 122 D.P.R. 334, 341 (1988)."*